IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXELIXIS, INC., | C.A. No. 24-1208 (RGA) |
| Plaintiff, | (Lead Case) |
| v. | **CONSOLIDATED** |
| SUN PHARMACEUTICALS INDUSTRIES LTD. and SUN PHARMACEUTICAL INDUSTRIES, INC., |  |
| Defendants. | |
| EXELIXIS, INC., | **REDACTED - PUBLIC VERSION** |
| Plaintiff, | |
| v. | C.A. No. 25-478 (RGA) |
| AZURITY PHARMACEUTICALS, INC., AZURITY PHARMACEUTICALS INDIA LLP, and SLAYBACK PHARMA LLC | |
| Defendants. | |

**PLAINTIFF EXELIXIS, INC.'S OPPOSITION TO THE AZURITY DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS
REGARDING U.S. PATENT NOS. 11,298,349 AND 12,128,039**

**CONFIDENTIAL VERSION FILED – 8/29/25
REDACTED VERSION FILED – 9/9/25**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.    Nature and Stage of Proceedings ............................................................... 2

    B.    The Low-Impurity Patents ......................................................................... 2

    C.    The Specification and Prosecution History of the Low-Impurity Patents ............. 4

    D.    Case Schedule ............................................................................................ 6

III.  LEGAL STANDARD ......................................................................................... 7

    A.    Judgment on the Pleadings ......................................................................... 7

    B.    Claim Construction ..................................................................................... 7

IV.   ARGUMENT ...................................................................................................... 8

    A.    Azurity Impermissibly Seeks to Circumvent the Claim Construction Process
        Required by Case Law and the Scheduling Order ................................................. 8

        1.    Azurity Ignores the *Phillips* Framework for Claim Construction ............. 9

        2.    Azurity's Motion Is Inconsistent With the Scheduling Order ................. 10

        3.    Courts Generally Decline to Narrow Claims at the Pleadings Stage........ 10

    B.    Azurity's Attempt to Read in Process Limitations Is Wrong and Has
        No Basis in the Claims or Intrinsic Record ........................................................ 11

        1.    The Low-Impurity Patents Cover Compositions of Cabozantinib
            (*S*)-Malate Not Limited by Any Specific Process.................................... 11

        2.    Azurity Invents Product-by-Process Limitations Never Suggested
            in Any of the Prior Proceedings Involving the Low-Impurity Patents ..... 14

    C.    Azurity Fails to Meet the High Bar for Disclaimer ............................................. 15

        1.    The Intrinsic Evidence Does Not Reflect Clear and Unmistakable
            Disavowal ................................................................................................ 15

        2.    The Extrinsic Evidence Does Not Reflect Clear and Unmistakable
            Disavowal ................................................................................................ 17

        3.    Azurity's Cited Caselaw Is Inapposite..................................................... 18

    D.    Azurity Asks the Court to Resolve Factual and Highly Technical Disputes
        Not Suitable for Resolution on the Pleadings ..................................................... 19

V.    CONCLUSION................................................................................................. 20

█████████████████████████████

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Abbott Lab'ys v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009)........................................................................13

*AFG Indus., Inc. v. Cardinal IG Co.*,
    375 F.3d 1367 (Fed. Cir. 2004)........................................................................12

*Almirall, LLC v. Torrent Pharms., Ltd.*,
    548 F. Supp. 3d 443 (D. Del. 2021)..................................................................18

*Alza Corp. v. Amneal Pharms. of New York, LLC*,
    C.A. No. 16-914-RGA, 2017 WL 1370696 (D. Del. Apr. 7, 2017) ......................2, 10, 11

*Amgen Inc. v. Alkem Lab'ys Ltd.*,
    C.A. No. 17-815-GMS, 2017 WL 6493150 (D. Del. Dec. 19, 2017)................................17

*Amgen Inc. v. F. Hoffmann-La Roche Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009)........................................................................13

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003)........................................................................18

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007)........................................................................19

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040 (Fed. Cir. 2016)........................................................................15

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
    C.A. No. 20-1463-LPS, 2022 WL 856750 (D. Del. Mar. 23, 2022) ...............................11

*Cont'l Circuits LLC v. Intel Corp.*,
    915 F.3d 788 (Fed. Cir. 2019)..................................................................13, 18

*Cordis Corp. v. Medtronic Ave, Inc.*,
    511 F.3d 1157 (Fed. Cir. 2008)........................................................................15

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.*,
    723 F. Supp. 2d 665 (D. Del. 2010)....................................................................8

*Eagle Pharms., Inc. v. Hospira, Inc.*,
    424 F.Supp.3d 355 (D. Del. 2019)....................................................................11

*Exelixis, Inc. v. MSN Labs. Private Ltd.*,
    C.A. No. 22-228-RGA, 2024 WL 4491176 (D. Del. Oct. 15, 2024)...........................3, 14

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
    64 F.3d 1553 (Fed. Cir. 1995) ........................................................................12

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) ......................................................................12

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) ........................................................................8

*Indivior Inc. v. Actavis Lab'ys UT, Inc.*,
    C.A. No. 18-497-RGA, 2019 WL 2098841 (D. Del. May 14, 2019) ...............19

*Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*,
    752 F. App'x 1024 (Fed. Cir. 2018) ...............................................................19

*Leyse v. Bank of Am. Nat'l Ass'n*,
    804 F.3d 316 (3d Cir. 2015) .............................................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) .......................................................................8, 20

*Medicines Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017) ......................................................................19

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ........................................................................8

*Novartis Pharms. Corp. v. Alembic Pharms. Ltd.*,
    C.A. No. 22-1395-RGA, 2023 WL 6387975 (D. Del. Sep. 29, 2023) .............20

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ...............................................7, 9, 11, 12, 13

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) .........................................................................7, 20

*Sandisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) ......................................................................15

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ..........................................................................................7

*Seachange Int'l, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ......................................................................19

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015) ......................................................................17

*UTTO Inc. v. Metrotech Corp.*,
    119 F.4th 984 (Fed. Cir. 2024) ............................................................8

*Vanguard Prods. Corp. v. Parker Hannifin Corp.*,
    234 F.3d 1370 (Fed. Cir. 2000)...................................................12, 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...........................................................................20

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 12(c) ..............................................................................7

## I.    INTRODUCTION

Azurity's motion for judgment on the pleadings of non-infringement with respect to U.S. Patent No. 11,298,349 (the "'349 Patent") and U.S. Patent No. 12,128,039 (the "'039 Patent") (together, the "Low-Impurity Patents") should be denied for three reasons. ***First***, Azurity's motion, premised on reading process steps into composition claims, improperly invites the Court to dispose of Exelixis' infringement claims without engaging in a proper claim construction process. Azurity fails to identify any claim term for construction, proffer a claim construction, or engage in a *Phillips*-style analysis of claims to be construed. D.I. 43 ("Br.") at 16-18. Azurity's attempt to circumvent the soon-to-begin claim construction process set forth in the Scheduling Order should be rejected.

***Second***, Azurity is wrong that process limitations should be read into the composition claims of the Low-Impurity Patents. There is no support for a product-by-process construction in the intrinsic evidence or the case law. Nor does prosecution disclaimer or prosecution history estoppel apply here, where there was no "clear and unmistakable" disavowal of claim scope. Tellingly, while Azurity relies heavily on statements made in litigation between Exelixis and MSN to support its position, it omits the fact that MSN never proposed any product-by-process claim construction or the non-infringement position Azurity now asserts. ***Even Azurity*** did not advocate for process limitations in its failed efforts to convince the Patent Trial and Appeal Board ("PTAB") to institute *inter partes* review ("IPR") proceedings on the Low-Impurity Patents. Indeed, Azurity's positions in those proceedings cannot be reconciled with the non-infringement argument it now advances before this Court.

***Third***, even if Azurity's proffered product-by-process limitations were warranted—and they are not—Azurity's non-infringement arguments require the Court to resolve highly technical issues without fact or expert discovery and based only on attorney argument. For example, to

resolve infringement under Azurity's product-by-process theory, the Court would have to evaluate Azurity's manufacturing process for cabozantinib (*S*)-malate and assess whether it is different from and non-equivalent to any purported process limitations. Br. 19-20. This is highly improper, and courts routinely deny Rule 12(c) motions in Hatch-Waxman cases with similar facts. *E.g.*, *Alza Corp. v. Amneal Pharms. of New York, LLC*, C.A. No. 16-914-RGA, 2017 WL 1370696, at *1-*2 (D. Del. Apr. 7, 2017). There is no basis to dismiss Exelixis' infringement claims at this stage of the proceedings. Azurity's motion should be denied.

## II.    BACKGROUND

### A.    Nature and Stage of Proceedings

This case is one of five related patent-infringement cases pending before this Court arising from efforts to market pharmaceutical products containing cabozantinib (*S*)-malate, the active ingredient in Plaintiff Exelixis, Inc.'s ("Exelixis") market-leading Cabometyx® therapy. Exelixis filed its Amended Complaint against Azurity Pharmaceuticals, Inc., Azurity Pharmaceuticals India LLP, and Slayback Pharma LLC (collectively, "Azurity") on April 24, 2025, alleging that the cabozantinib (*S*)-malate product covered by Azurity's pending 505(b)(2) NDA infringes the Low Impurity Patents as well as U.S. Patent Nos. 8,877,776, 11,091,439, 11,091,440, 11,098,015 (collectively the "Crystalline Malate Salt Patents"). On July 28, 2025, Azurity filed two motions under Rule 12(c) for judgment on the pleadings of non-infringement separately addressing the Low-Impurity Patents and the Crystalline Malate Salt Patents.

### B.    The Low-Impurity Patents

Exelixis makes Cometriq® and Cabometyx®, approved by the FDA for treatment of patients with kidney, liver, thyroid, or neuroendocrine cancer. Both contain cabozantinib (*S*)-malate as their active ingredient. The Low Impurity Patents claim pharmaceutical compositions

of cabozantinib (*S*)-malate that have low levels of a genotoxic impurity known as "6,7-dimethoxy-quinoline-4-ol," or the "1-1 impurity."

The '349 Patent includes two independent claims and one dependent claim. Independent claim 3 recites: "A pharmaceutical composition for oral administration comprising Compound IB [cabozantinib (*S*)-malate]; one or more fillers; one or more disintegrants; one or more glidants; and one or more lubricants, wherein the pharmaceutical composition is a tablet or capsule pharmaceutical composition; and wherein the pharmaceutical composition is essentially free of 6,7-dimethoxy-quinoline-4-ol." D.I. 21-8 ('349 Patent), claim 3.

In prior litigation before this Court, Exelixis asserted claim 3 of the '349 Patent against MSN Laboratories Private Ltd. and MSN Pharmaceuticals, Inc. (together, "MSN"). MSN manufactures the active pharmaceutical ingredient ("API") in Azurity's 505(b)(2) NDA Product, and so Azurity's API necessarily uses the same process as MSN. Although MSN asserted that its proposed generic product did not contain a "glidant," it did not contest infringement of any other claim elements. Neither MSN nor Exelixis proposed any term of the '349 Patent for construction. *Exelixis, Inc. v. MSN Labs. Private Ltd.*, C.A. No. 22-228-RGA, 2024 WL 4491176, at *6 (D. Del. Oct. 15, 2024) ("*MSN II*"). Although MSN asserted that claim 3 of the '349 Patent was obvious, the Court rejected that challenge. *Id.* at *34. In addressing infringement and obviousness at trial, no one asserted, nor did the Court find, that claim 3 included any process limitations. Azurity filed an IPR petition challenging claims 1-3 of the '349 Patent, which the PTAB declined to institute because Azurity failed to show a reasonable likelihood that it would prevail with respect to any claim. Ex. 8 (*Azurity Pharm., Inc. v. Exelixis, Inc.*, IPR2025-00210, Paper 11 (PTAB Jun. 4, 2025)) at 29. Azurity never offered any product-by-process construction to the Board. *See* Ex. 9 (IPR2025-00210, Paper 2 (PTAB Nov. 18, 2024)) at 10-11.

The '039 Patent, a continuation of the '349 Patent, includes two independent claims and 20 dependent claims. Independent claim 1 recites "A pharmaceutical composition for oral administration comprising Compound IB [cabozantinib (*S*)-malate]; and a pharmaceutically acceptable carrier, wherein the pharmaceutical composition is a tablet or a capsule, and wherein the pharmaceutical composition contains 100 ppm or less of 6,7-dimethoxy-quinoline-4-ol." D.I. 21-10 ('039 Patent), claim 1. Azurity also filed an IPR petition challenging all claims of the '039 Patent, which the Acting Director discretionarily denied, finding that its challenges were substantially similar to those raised against the related '349 Patent in the prior district court proceeding and prior Board proceeding, both of which "determined that the arguments Petitioner is presenting here were unpersuasive." Ex. 10 (*Azurity Pharm., Inc. v. Exelixis, Inc.*, IPR2025-00427, Paper 13 (PTAB July 2, 2025)) at 2. Again, Azurity never offered the Board the product-by-process reading it advances here. Ex. 11 (IPR2025-00427, Paper 2 (Petition) (PTAB Jan. 9, 2025)) at 12 ("Azurity does not believe that any claim terms require construction"); *id.* at 1.[1]

## C.     The Specification and Prosecution History of the Low-Impurity Patents

The Low-Impurity Patents identify the 1-1 impurity as an undesirable byproduct that may form during synthesis of cabozantinib (*S*)-malate and describe compositions that minimize its content. D.I. 21-8 ('349 Patent), 22:8-24:8. A process for synthesizing cabozantinib (*S*)-malate is disclosed in the common specification, *id.* at 24:30-30:61; however, the disclosure teaches that this process ("Scheme 1") is just one way to obtain compositions of cabozantinib (*S*)-malate with low levels of the 1-1 impurity and not necessarily the only way, *Id.* at 24:34-37 ("A synthetic route ***that can be used*** for the preparation of [cabozantinib] and the (L)-malate salt thereof is depicted …."); *id.* at 24:13-23.

---

[1] All emphasis in quotations in this memorandum is added unless otherwise noted.

The specification also discloses compositions of cabozantinib (*S*)-malate. It states, "[T]his disclosure relates to processes for preparing quinolines … ***and to pharmaceutical compositions containing such compounds***." D.I. 21-8 ('349 Patent), 1:27-34. The specification teaches, "***There is also a need for new pharmaceutical compositions containing quinolines*** such as compound IA [(cabozantinib)] that are essentially free of process byproducts…. These and other needs are met by the present disclosure, which is directed to processes for making ***and compositions containing quinolines or pharmaceutically acceptable salts thereof***." *Id.* at 3:32-41. The specification describes various examples of pharmaceutical compositions containing cabozantinib (*S*)-malate. *See id.* at 5:18-20; *id.* at 5:25-7:9 (in Tables 1-6, describing pharmaceutical tablet and capsule compositions containing cabozantinib (*S*)-malate); *id.* at 7:10-13; *see generally id.* at 20:38-24:8 (section titled "Pharmaceutical Compositions"). The specification does not restrict the disclosed compositions to any particular method of preparation or synthesis of cabozantinib (*S*)-malate and expressly states, "The invention is illustrated further by the following examples in Scheme 1 and the description thereof, ***which are not to be construed as limiting the invention in scope or spirit to the specific procedures described in them***." *Id.* at 24:13-16; *accord id.* at 24:16-23.

The prosecution history of the Low-Impurity Patents is consistent with the claimed compositions including cabozantinib (*S*)-malate made by ***any*** process, provided that they otherwise meet the limitations of the claims. During prosecution of Application No. 17/170,275 (the "'275 Application"), which issued as the '349 Patent and is a parent application of the '039 Patent, the Examiner rejected claims reciting compositions of cabozantinib (*S*)-malate as obvious over several prior art references. Ex. 12 (App. No. 17/170,275, Final Rejection, July 20, 2021). In response, Exelixis submitted a declaration of named inventor Dr. Khalid Shah, who described why development of a storage-stable composition of cabozantinib (*S*)-malate was difficult and

highlighted the unexpected stability of the claimed compositions.  Ex. 13 (App. No. 17/170,275, Decl. of Khalid Shah Under 37 C.F.R. § 1.132, Jan. 20, 2022 ("Shah Declaration")).  The Shah Declaration states, "The '275 application is directed to pharmaceutical compositions of [cabozantinib (*S*)-malate]."  *Id.* ¶ 8.  It provides details of stability testing in Sections titled "Capsule Pharmaceutical Composition Stability" and "Tablet Pharmaceutical Composition Stability."  *Id.* ¶¶ 13-25.  The Shah Declaration does not describe these compositions as limited to containing cabozantinib (*S*)-malate produced by any specific process.

Likewise, Exelixis' remarks accompanying the Shah Declaration confirm that the claimed invention encompasses compositions without restriction to manufacture by a particular process. Exelixis stated: "[The references cited by the Examiner] do not teach or suggest ***a pharmaceutical composition for oral administration as claimed*** by the Applicant…."  Ex. 14 (App. No. 17/170,275, Applicant Remarks, Jan. 20, 2022) at 4.  Exelixis added, "***The Applicant has invented capsule and tablet pharmaceutical compositions*** that are stable upon storage and that do not give rise to process byproducts or contaminants."  *Id.* at 6.  Exelixis further stated, "***the claimed pharmaceutical compositions*** have surprisingly high purity that would not have been expected based on the disclosure of the cited references."  *Id.* at 7.  In response to this evidence of unexpected results, the Examiner withdrew the rejection and allowed all claims.  Ex. 15 (App. No. 17/170,275, Notice of Allowance, Feb. 10, 2022).

### D.    Case Schedule

Pursuant to the Scheduling Order, the claim construction process will begin in September with exchanges between the parties and a *Markman* hearing to be held on January 6, 2026.  D.I. 58 at 9-11.  Moreover, discovery is just beginning. Azurity has not produced any documents other than its 505(b)(2) NDA and has yet to produce samples of its 505(b)(2) Product.  No written discovery responses have been exchanged other than initial disclosures, and no fact depositions

have been noticed.  On July 29, 2025, Exelixis served requests for production seeking documents beyond Azurity's NDA submissions, including documents related to Azurity's manufacturing process.  To date, Azurity has not produced the requested documents.

## III.    LEGAL STANDARD

### A.    Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate only where the movant clearly establishes that "no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  A Rule 12(c) motion is governed by the same standard as a motion to dismiss under Rule 12(b)(6) when the motion alleges a failure to state a claim upon which relief can be granted.  *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015).  "The court must accept the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  *Rosenau*, 539 F.3d at 229 (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).

### B.    Claim Construction

Claim construction is a question of law that may involve underlying findings of fact.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005) (en banc).  Claim terms "are generally given their ordinary and customary meaning … to a person of ordinary skill in the art in question at the time of the invention."  *Id.* at 1312-13.  Courts construe claims by considering "[t]he claims, the specification, and the prosecution history," and may also consider extrinsic

evidence such as expert testimony. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The Federal Circuit has held that claim construction is generally inappropriate at the pleading stage, particularly where the claim construction arguments rely on extrinsic evidence. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018) ("Defendants' arguments boil down to objections to Nalco's proposed claim construction [], a dispute not suitable for resolution on a motion to dismiss"); *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 996 (Fed. Cir. 2024) (remanding claim construction resolved on motion to dismiss for "more focused record development" (quoting *Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014))). Courts have declined to construe claims at the pleading stage even when only intrinsic evidence is cited. *See Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 670–71 (D. Del. 2010) (determining that the absence of extrinsic materials "only serves to illustrate the point" that compliance with Rule 12(b)(6) procedures does not mean the Court can properly construe claims contrary to the plaintiff's infringement allegations). Finally, to the extent claim scope is considered at the pleading stage, claims are afforded their broadest possible construction. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012).

## IV.    ARGUMENT

### A.    Azurity Impermissibly Seeks to Circumvent the Claim Construction Process Required by Case Law and the Scheduling Order

Azurity urges the Court to read process limitations into the composition claims of the Low-Impurity Patents at the pleadings stage based on nothing more than Azurity's conclusory and undeveloped assertions. That contradicts applicable case law and the Scheduling Order.

### 1.    Azurity Ignores the *Phillips* Framework for Claim Construction

The Federal Circuit's decision in *Phillips* established a legal framework for claim construction. Under *Phillips*, a claim construction analysis begins with the claim language. *Phillips*, 415 F.3d at 1314. The words of a claim are generally given their ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1312-13. In determining how a skilled artisan would understand the words of a claim, courts look to the words of the claims, the intrinsic record, including the specification, prosecution history, and IPRs, if any, and extrinsic evidence. *Id*. at 1314. To facilitate the claim construction process, scheduling orders (like the one entered by the Court in this case) require the parties to exchange claim terms to be construed, proposed constructions, claim construction charts indicating the intrinsic evidence supporting each party's position, and briefs designed to narrow and clarify the dispute for judicial resolution.

Azurity improperly seeks to bypass this framework. Azurity does not identify any specific claim term for construction, nor does it plainly set forth a proposed construction, asserting only that "process limitations" should be included in the claims without expressly stating what process language should be added to the claims and where. Br. at 1-2, 3-5, 15-19. Azurity compounds this error by advancing inconsistent descriptions of how many process steps it would port into the claims. Br. at 2, 8 (four purported "key steps"); *id*. at 4 (three purported "key features" of the process); *id*. at 18 (three purported "key distinguishing steps"). Azurity also fails to clearly set forth the evidence from the specification, prosecution history, and extrinsic record (i.e., litigation statements) that purportedly supports its desired construction(s). Azurity simply patches together cherry-picked statements from prosecution, IPR briefing, and prior litigation. Br. at 16-19. Also missing from Azurity's brief is any discussion of the applicable legal standard for claim

construction.  The Court should decline to adopt a claim construction or read in vague process limitations based on such inadequate and cursory argument.

### 2.    Azurity's Motion Is Inconsistent With the Scheduling Order

Azurity's Motion seeks to shortcut the claim construction process currently scheduled to begin on September 4, 2025.  Pursuant to the Scheduling Order, D.I. 58, the parties are required to (1) exchange lists of claim terms for construction and proposed constructions; (2) file a Joint Claim Construction Chart with the Court by September 18, 2025; (3) exchange opening, answering, reply, and sur-reply claim construction briefs, and file these as a Joint Claim Construction Brief by December 10, 2025 setting forth, *inter alia*, a table of disputed constructions for the Court; and (4) present argument to the Court at a January 6, 2026 *Markman* Hearing.  D.I. 58 at 9-11.  Azurity has done none of this—and evidently would prefer not to.[2]  Br. at 20.  Azurity is asking to read in process limitations that are purportedly dispositive of infringement without following the legally required steps of construing the claims and applying the properly construed claims to the accused product.  *Id*.  Its attempt to circumvent the law and the order of this Court with a scant three pages of argument, Br. at 15-18, should be denied.

### 3.    Courts Generally Decline to Narrow Claims at the Pleadings Stage

Courts in this District, including this Court, have declined to limit claim terms at such early stages of litigation without the benefit of *Markman* procedures.  For example, in *Alza*, this Court considered a Rule 12(c) motion for judgment of noninfringement based on a construction proffered by the defendants.  *Alza*, 2017 WL 1370696, at *1-*2.  Although the defendants relied upon portions of the specification to support their position, the Court found ambiguity in the cited

---

[2] It is also inappropriate to engage in claim construction without involving the other defendants to this litigation in view of this Court's order that the matters in the above caption "should be consolidated **for all purposes**."  D.I. 58 at 2.

disclosure and denied the motion: "[a]t this stage, without formal claim construction, [the Court] decline[s] to read a limitation into the claim language from the embodiments," because "this case requires claim construction and probably expert testimony before a finding on infringement can be made." *Id.*; *see also Eagle Pharms., Inc. v. Hospira, Inc.*, 424 F.Supp.3d 355, 358-59 (D. Del. 2019) (denying motion to dismiss where accused infringer argued that claim required "non-aqueous" product under doctrines of claim vitiation and prosecution history estoppel, because dispute as to meaning of "non-aqueous" was "not suitable for resolution in the context of a motion to dismiss"); *Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-1463-LPS, 2022 WL 856750, at *4 (D. Del. Mar. 23, 2022) (denying motion to dismiss infringement claims based on alleged prosecution history estoppel, because such arguments "require[d] the Court to consider materials outside of the pleadings and perform an early claim construction, practices either unpermitted or unwarranted at the motion to dismiss stage"). The same reasoning applies here.

## B.    Azurity's Attempt to Read in Process Limitations Is Wrong and Has No Basis in the Claims or Intrinsic Record

It is well-settled that "one of the cardinal sins of patent law" is "reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1320. Yet Azurity asks the Court to graft process limitations lifted from the exemplary disclosure in the specification (i.e., Scheme 1) into the composition claims of the Low-Impurity Patents. Azurity's product-by-process arguments are untethered to the claim language and the specification's teachings and unsupported by governing case law.

### 1.    The Low-Impurity Patents Cover Compositions of Cabozantinib (*S*)-Malate Not Limited by Any Specific Process

There is no support in the claims or specification for Azurity's proposal to limit the composition claims to any specific process. Nor does Azurity's selective citation to the file history

or extrinsic evidence support its position. Even *Azurity* acknowledges that generally, "product claims are not limited by methods of manufacture." Br. at 16.

The Federal Circuit has routinely rejected claim constructions seeking to read process limitations into composition claims. *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000) (noting that "[t]he method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process," and finding that recitation of thin layer "integral therewith" did not limit product claim to process in specification); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) (composition claims not limited to manner of manufacturing where such manner not recited in claims); *AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1372-73 (Fed. Cir. 2004) ("[Defendant] asks this court to adopt a new construction of the claim that would impermissibly import a process limitation into a pure product claim. … [T]he term 'layer' in the '532 patent does not require any particular method of manufacture.").

Additionally, the Federal Circuit has "repeatedly warned against confining the claims to those embodiments" disclosed in the specification. *Phillips*, 415 F.3d at 1323. "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014) (quotation marks omitted). Such clear intent to limit claim scope to product-by-process is absent here. *See infra*, Section C. Azurity points to nothing that justifies departure from this precedent.

**Claims**. By their plain language, the independent claims of the Low-Impurity Patents do not contain a method, process or source limitation but instead recite "[a] pharmaceutical

composition for oral administration comprising [cabozantinib (*S*)-malate]." D.I. 21-8 ('349 Patent) at claims 1, 3; D.I. 21-10 ('039 Patent) at claims 1, 6. Although Azurity points to the term "process byproducts or contaminants" in claim 1 of the '349 Patent, Br. at 6, the term "process" does not appear at all in independent claim 3 of the '349 Patent or any claim of the '039 Patent. Yet Azurity defiantly seeks to read in multiple process-step limitations with no basis in the claims. Br. at 4. It is a "bedrock principle" that the claims, not the specification, "define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Azurity's reliance on cases involving claims that expressly recited a process or source limitation is misplaced. *E.g.*, *Abbott Lab'ys v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009); *Amgen Inc. v. F. Hoffmann-La Roche Ltd.*, 580 F.3d 1340, 1370 (Fed. Cir. 2009).

**Specification**. Disclosure of an exemplary process to synthesize cabozantinib (*S*)-malate, D.I. 21-8 ('349 Patent), 24:30-30:61, does not support limiting the claims to that specific process. *See Vanguard Prods*, 234 F.3d at 1372. The specification discloses compositions of cabozantinib (*S*)-malate, D.I. 21-8 ('349 Patent), 1:27-34, 3:32-41, 5:18-20; 5:25-7:9, 7:10-13; 20:38-24:8, and also teaches that "the following examples in Scheme 1 … ***are not to be construed as limiting the invention in scope or spirit to the specific procedures described in them***," *id*. at 24:13-16; *see also id.* at 24:16-23, 24:34-37; *see Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) ("phrases such as '***one*** technique,' '***can be*** carried out,' and '***a*** way' indicate that using [dialectric material] is only one method for making the invention and does not automatically lead to finding a clear disavowal of claim scope"). Azurity ignores this language and fails to cite any authority for limiting the claims to an exemplary, non-limiting process in the specification.

████████████████████████████████████████

### 2.     Azurity Invents Product-by-Process Limitations Never Suggested in Any of the Prior Proceedings Involving the Low-Impurity Patents

It is telling that in multiple prior proceedings involving the Low-Impurity Patents, no one—neither MSN, nor the PTAB, nor Azurity, nor this Court—ever suggested that the '349 Patent or the '039 Patent recites product-by-process claims.  Exelixis and MSN litigated validity and infringement of the '349 Patent through a four-day bench trial, but the parties and the Court never suggested that proving infringement or invalidity required establishing the presence of unrecited process limitations.  ████████████████████████████████████

█████████████████ Br. at 4-5, 9, 11.  Notably, in *MSN II* the only question with respect to infringement was whether the accused product contained a glidant.  *MSN II*, 2024 WL 4491176, at *6 ("The parties agree that MSN's ANDA Products meet all the claim limitations of Claim 3 other than "comprising… one or more glidants.").  ████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████▌

In Azurity's unsuccessful IPR petitions challenging the Low-Impurity Patents, Azurity never attempted to read process limitations into the claims.  Instead, its invalidity arguments rested on broad readings of the claims; Azurity did not ever attempt to map out where at least several of the now-purported process limitations could be found in its asserted prior art.  *E.g.*, Ex. 9 (*Azurity Pharms., Inc. v. Exelixis, Inc.*, IPR2025-00210, Paper 2 (PTAB Nov. 18, 2024)) at 28; Ex. 11 (*Azurity Pharms., Inc. v. Exelixis, Inc.*, IPR2025-00427, Paper 2 (PTAB Jan. 9, 2025)) at 1 ("The independent claims of the '039 patent *broadly relate to a tablet or capsule composition of cabozantinib (S)-malate* (denoted 'Compound IB') containing '100 ppm or less of 6,7-dimethoxy-

---

[3] MSN has likewise stipulated to infringement of the '039 Patent.  *Exelixis, Inc. v. MSN Labs. Private Ltd.*, C.A. No. 24-1208-RGA, D.I. 47.

quinoline-4-ol' or a method of treating cancer using the same composition."). Thus, even Azurity has conceded that the Low-Impurity Patents cover compositions, full stop.

### C.    Azurity Fails to Meet the High Bar for Disclaimer

Lacking support in the claims and specification, Azurity turns to a skewed reading of other statements from intrinsic and extrinsic evidence to argue that Exelixis "disclaimed coverage of cabozantinib malate made by other processes." Br. at 17-18. In so doing, Azurity not only mischaracterizes the record but also fails to meet the high standard for disclaimer.

Prosecution disclaimer requires clear and unmistakable disavowal of claim scope. *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008). "When the prosecution history is used solely to support a conclusion of patentee disclaimer," as Azurity does here, "the standard for justifying the conclusion is a high one" and requires a "clear and unmistakable" disclaimer. *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016). "There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). None of the excerpts relied upon by Azurity reflects a "clear and unmistakable" requirement that the claimed compositions be made by any specific process.

### 1.    The Intrinsic Evidence Does Not Reflect Clear and Unmistakable Disavowal

Azurity's disclaimer argument is not supported by the intrinsic evidence, i.e., the prosecution history and IPRs. Exelixis' prosecution arguments do not indicate that Scheme 1 or any of its synthetic steps limit the claimed compositions. Rather, the Shah Declaration repeatedly states that the application is directed to pharmaceutical ***compositions*** of cabozantinib (*S*)-malate, *see* Ex. 13 (Shah Decl.) ¶¶ 8, 13-25, and contains no indication that such compositions are limited

15

to cabozantinib (*S*)-malate produced by any specific process.  Exelixis' statements submitted with the declaration confirm that what is claimed is "a pharmaceutical composition for oral administration," limited only by what is expressly recited in the claim.  Ex. 14 (App. No. 17/170,275, Applicant Remarks, Jan. 20, 2022) at 4, 6, 7.

Azurity cites statements Exelixis made in prosecution of Application No. 15/348,716, Br. at 19, but those cannot evidence disavowal of claim scope because Exelixis was addressing an obviousness rejection involving ***process*** claims with specific process limitations—not ***composition*** claims that recite purity limitations, like those here.  In prosecuting the composition claims here, Exelixis relied on the purity limitations, among other things, to distinguish the prior art, with the exemplary Scheme 1 being one way (but not the only way) to achieve the claimed purity levels.  Ex. 14 (App. No. 17/170,275, Applicant Remarks, Jan. 20, 2022) at 3-6.  Azurity acknowledges that the relevant question for prosecution disclaimer from disavowals in ancestor applications is "whether the statements from the prosecution 'relat[e] to the same subject matter as the claim language at issue in the patent being construed."  Br. at 13 (citing *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1314 (Fed. Cir. 2007)).  Exelixis' arguments made while prosecuting a different application that included ***only process claims*** and distinguishing particular process-claim limitations from Kubo do not disclaim scope from the composition claims of the Low-Impurity Patents.

Likewise, at no point during the IPRs did Exelixis ever say that the claimed invention was limited to compositions containing API made using any particular process.  On the contrary, Exelixis emphasized its discovery of the 1-1 impurity as well as the fact that it could form by degradation under certain conditions. *E.g.*, Ex. 16 (*Azurity Pharm., Inc. v. Exelixis, Inc.*, IPR2025-00210, Paper 8 (PTAB Mar. 11, 2025)) at 1-4; Ex. 17 (*Azurity Pharm., Inc. v. Exelixis, Inc.*,

16

IPR2025-00427, Paper 10 (PTAB Jun. 6, 2025)) at 1-4.  The arguments Azurity quotes, Br. at 16-

17, were made in the context of rebutting Azurity's assertion that the invention was obvious; while

Exelixis explained how it spent significant time and effort minimizing the 1-1 impurity, and would

not have done so if prior art methods inherently resulted in a composition having the claimed purity

levels, Exelixis never argued that Scheme 1 was the only way to prepare the claimed compositions,

nor characterized the claims as product-by-process claims.  *See generally id.*

### 2.    The Extrinsic Evidence Does Not Reflect Clear and Unmistakable Disavowal

Azurity primarily relies on extrinsic evidence, i.e., statements from the prior *MSN II*

litigation.  Br. at 8, 17-18.  Extrinsic evidence "is generally of less significance than the intrinsic

record" and "may not be used 'to contradict claim meaning that is unambiguous in light of the

intrinsic evidence.'"  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015)

(quoting *Phillips*, 415 F.3d at 1317, 1324).  This evidence is also highly disputed, which makes

the question of alleged disclaimer even less appropriate for resolution on the pleadings.  *C.f. Amgen

Inc. v. Alkem Lab'ys Ltd.*, C.A. No. 17-815-GMS, 2017 WL 6493150, at *2–*3 (D. Del. Dec. 19,

2017) (denying Rule 12(c) motion based on prosecution history estoppel where "there [were]

material disputes of fact between the parties concerning the prosecution history" of asserted

patent).

In any case, none of the statements that Azurity cherry-picks from the prior litigation gives

rise to "clear and unmistakable" disavowal of compositions made by processes other than Scheme

1, as Azurity contends.  Br. at 16-18.  Those statements were made in the context of rebutting

MSN's arguments regarding inherent obviousness.  Specifically, MSN argued in *MSN II* that the

"natural result" of the prior art Brown Process was a cabozantinib (*S*)-malate composition

"essentially free" of the 1-1 impurity.  Exelixis contrasted the exemplary process in the Low-

Impurity Patent specification with the prior-art Brown Process to rebut arguments that the 1-1 impurity level was a known problem and that correcting it would have been routine. *See, e.g.*, D.I. 21-6 (Exelixis Responsive Post-Trial Brief) at 1, 46-54. But Exelixis never argued that the process exemplified in the specification was the ***only*** way to obtain compositions with the claimed low levels of the 1-1 impurity, nor characterized the claims as product-by-process claims. To the contrary, Exelixis made clear that a key aspect of the invention was identifying the 1-1 impurity and the conditions under which it formed as a degradant. *See id*. at 39-43, 45. Moreover, the fact that the infringement dispute in *MSN II* was limited to whether MSN's product contained a glidant and that neither the parties nor the Court ever suggested a ***single*** process limitation in the '349 Patent both militate against Azurity's position.

Seen in context, Exelixis' statements do not rise to the level of a "clear and unmistakable disavowal" required for a finding of disclaimer. *See Cont'l Circuits*, 915 F.3d at 797-98 (district court erred in reading in process limitation to device claims, because patentee's statements merely comparing and contrasting said process to that of prior art did not amount to clear and unmistakable disavowal); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1329 (Fed. Cir. 2003) (rejecting argument that claims directed to pharmaceutical compositions were limited by manufacturing process, as claims did not expressly recite any such process and no clear statements in prosecution history supported alleged estoppel).

### 3. Azurity's Cited Caselaw Is Inapposite

The cases Azurity cites in support of disclaimer are unavailing. Azurity cites only ***one*** case finding prosecution disclaimer on a Rule 12(c) motion: *Almirall, LLC v. Torrent Pharms., Ltd.*, 548 F. Supp. 3d 443 (D. Del. 2021). But *Almirall* involved unambiguous prosecution statements explicitly surrendering claim coverage, *see id*. at 449-50, a far cry from Exelixis' statements here, which are entirely compatible with composition-only claims, as explained in Section C.1. Azurity

18

cites other cases in which courts found process limitations in product claims based on disclaimer, Br. at 16, 19-20, but these were decided at later stages of litigation and involved either specifications that clearly indicated the invention *required* the process, or unambiguous statements in the prosecution history—both of which are absent here. *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1372, 1374-75 (Fed. Cir. 2007) (product claim limited to process where specification "use[d] language of requirement, not preference" regarding process); *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1302-06 (Fed. Cir. 2017) (construing formulation claims to require process where specification and prosecution statements clearly indicated claims required said process); *Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, 752 F. App'x 1024, 1033 (Fed. Cir. 2018) (finding disclaimer of films produced via certain methods because specification disclaimed and disparaged such methods); *Indivior Inc. v. Actavis Lab'ys UT, Inc.*, C.A. No. 18-497-RGA, 2019 WL 2098841 at *5 (D. Del. May 14, 2019) (same); *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1373-74 (Fed. Cir. 2005) (patent owner disclaimed claim scope where it "argu[ed] for patentability … based upon an interpretation of "network" as requiring point-to-point interconnections). Notably, Azurity cites no support of this kind from the Low-Impurity Patent specification or file history.

### D. Azurity Asks the Court to Resolve Factual and Highly Technical Disputes Not Suitable for Resolution on the Pleadings

Azurity argues that it does not infringe literally or under the doctrine of equivalents under its desired process limitations because its 505(b)(2) NDA Product is made using a different process. Br. at 3 n.4, 9-10, 18. Even if Azurity's product-by-process reading had any merit— which it does not—the process by which Azurity's 505(b)(2) NDA Product is made would still deserve record development through discovery, including production of documents regarding Azurity's manufacturing process and testimony of knowledgeable fact witnesses. *See Novartis*

██████████████████████████

*Pharms. Corp. v. Alembic Pharms. Ltd.*, C.A. No. 22-1395-RGA, 2023 WL 6387975, at *5 (D. Del. Sep. 29, 2023) ("[A]n ANDA does not provide a complete answer to infringement.").

Additionally, even if Azurity were correct that the claims include process limitations, and that its manufacturing process for its 505(b)(2) NDA Product is facially different from those limitations, the record would ***still*** not be sufficiently developed to allow the Court to resolve infringement. Rather, resolution would require (1) following an actual claim construction process to construe disputed terms; (2) comparing those terms, properly construed, to Azurity's 505(b)(2) NDA Product (and, to the extent relevant, its method of manufacture); and (3) assessing the scope of equivalents for each limitation (if any) that were not literally present and comparing that to any accused equivalent, considering any limits on the doctrine that may apply. *See Markman*, 52 F.3d at 976; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997). For example, assessing doctrine of equivalents for the alleged (unclear) process limitations would require parsing Azurity's technical documents ████████████████████████████████, *see* Br. at 9-10, and determining whether they are equivalents. These are technical matters that should be addressed through expert testimony. Azurity offers nothing more than attorney argument on these technical issues, to the extent it addresses them at all. Br. at 19-20.

Azurity's motion thus invites the Court to resolve disputes of material fact based only on Azurity's say-so, and before Exelixis has had any chance to develop the infringement record through discovery. Such a hasty ruling would contravene the applicable legal standard under Rule 12(c) to accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *Rosenau*, 539 F.3d at 221.

## V.    CONCLUSION

For the reasons above, Exelixis respectfully requests that the Court deny Azurity's Motion.

███████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Lisa J. Pirozzolo
Emily R. Whelan
Kevin S. Prussia
Jonathan A. Cox
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Amy K. Wigmore
Gerard A. Salvatore
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
(202) 663-6000

Cindy Kan
Anna Mizzi
Alexander P. Gorka
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street, 45th Floor
New York, NY 10007
(212) 230-8800

August 25, 2025

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Exelixis, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 25, 2025, upon the following in the manner indicated:

Kenneth L. Dorsney, Esquire                    *VIA ELECTRONIC MAIL*
Cortlan S. Hitch, Esquire
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
*Attorneys for Defendants Azurity*
*Pharmaceuticals, Inc., Azurity Pharmaceuticals*
*India LLP, and Slayback Pharma LLC*

Andrew J. Miller, Esquire                      *VIA ELECTRONIC MAIL*
Elham F. Steiner, Esquire
WINDELS MARX LANE & MITTENDORF LLP
1 Giralda Farms
Madison, NJ 07940-1021
*Attorneys for Defendants Azurity*
*Pharmaceuticals, Inc., Azurity Pharmaceuticals*
*India LLP, and Slayback Pharma LLC*

/s/ Anthony D. Raucci
_____
Anthony D. Raucci (#5948)