IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF DELAWARE

| | |
|---|---|
| EXELIXIS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>SUN PHARMACEUTICALS INDUSTRIES LTD. and SUN PHARMACEUTICAL INDUSTRIES, INC.,<br><br>   Defendants. | C.A. No. 24-1208 (RGA)<br>(Lead Case)<br><br>**CONSOLIDATED**<br><br><br><br>**REDACTED - PUBLIC VERSION** |
| EXELIXIS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>AZURITY PHARMACEUTICALS, INC., AZURITY PHARMACEUTICALS INDIA LLP, and SLAYBACK PHARMA LLC,<br><br>   Defendants. | C.A. No. 25-478-RGA |

**PLAINTIFF EXELIXIS, INC.'S OPPOSITION
TO THE AZURITY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
REGARDING U.S. PATENT NOS. 8,877,776, 11,091,439, 11,091,440, AND 11,098,015**

**CONFIDENTIAL VERSION FILED - 8/25/25
REDACTED VERSION FILED - 9/8/25**

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENTS ................................................................................... 1

II.   BACKGROUND ......................................................................................................... 2

      A.    Nature and Stage of Proceedings ................................................................... 2

      B.    The Crystalline Malate Salt Patents ............................................................... 3

            1.    The Claims of the Crystalline Malate Salt Patents ............................. 3

            2.    The Crystalline Malate Salt Patents' Specification and
                  Prosecution History............................................................................. 4

            3.    Prior Litigation Involving the Crystalline Malate Salt Patents.................. 6

      C.    Case Schedule ................................................................................................ 6

III.  LEGAL STANDARD ................................................................................................ 7

      A.    Judgment on the Pleadings............................................................................. 7

      B.    Claim Construction ........................................................................................ 7

IV.   ARGUMENT ............................................................................................................. 8

      A.    Azurity's Claim-Narrowing Arguments Are Wrong ...................................... 9

            1.    Azurity Ignores the Law and Procedures for Claim Construction.............. 9

            2.    The Plain and Ordinary Meaning of "Crystalline" Includes Any
                  Amount of Crystalline.................................................................... 10

            3.    Azurity Fails to Meet the High Bar for Prosecution History Estoppel
                  and/or Disclaimer .......................................................................... 12

            4.    Azurity's Arguments Could Only Apply to Pharmaceutical
                  Composition Claims........................................................................ 16

      B.    Azurity's Non-Infringement Arguments are Premature, Wrong, and Highlight the
            Need for Discovery ....................................................................................... 16

            1.    Exelixis Is Entitled to Discovery on Its Infringement Claims ................. 16

            2.    Azurity Improperly Asks the Court to Resolve Factual and Highly
                  Technical Disputes on the Pleadings................................................. 17

V.    CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*AFG Indus., Inc. v. Cardinal IG Co., Inc.*,
239 F.3d 1239 (Fed. Cir. 2001)..........................................................................................12

*Almirall, LLC v. Torrent Pharms., Ltd.*,
548 F. Supp. 3d 443 (D. Del. July 13, 2021) ............................................................15, 16

*Alza Corp. v. Amneal Pharms. of New York, LLC*,
C.A. No. 16-914-RGA, 2017 WL 1370696 (D. Del. Apr. 7, 2017) ...............................10

*Amgen Inc. v. Alkem Lab'ys Ltd.*,
C.A. No. 17-815-GMS, 2017 WL 6493150 (D. Del. Dec. 19, 2017)..............................14

*Bausch & Lomb Inc. v. SBH Holdings LLC*,
C.A. No. 20-1463-LPS, 2022 WL 856750 (D. Del. Mar. 23, 2022) ...............................10

*Bayer Intell. Prop. GmbH v. CAP IM Supply, Inc.*,
C.A. No. 17-591-RGA, 2018 WL 1517688 (D. Del. Mar. 28, 2018)..............................14

*Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*,
477 F. Supp. 3d 306 (D. Del. 2020) .........................................................................10, 11

*Bristol-Myers Squibb Co. v. Xspray Pharma AB*,
C.A. No. 22-964-RMB, 2023 WL 3354261 (D.N.J. Apr. 25, 2023)...............................17

*Cordis Corp. v. Medtronic Ave, Inc.*,
511 F.3d 1157 (Fed. Cir. 2008)........................................................................................12

*Deston Therapeutics LLC v. Trigen Lab'ys Inc.*,
723 F. Supp. 2d 665 (D. Del. 2010)...................................................................................8

*Eagle Pharms., Inc. v. Hospira, Inc.*,
424 F. Supp. 3d 355, 358-359 (D. Del. 2019)..................................................................10

*Exelixis, Inc. v. MSN Lab'ys Private Ltd.*,
C.A. No. 22-228-RGA, 2024 WL 4491176 (D. Del. Oct. 15, 2024)................................6

*Exelixis, Inc. v. MSN Labs. Private Ltd.*,
C.A. No. 19-2017-RGA, 2023 WL 315614 (D. Del. Jan. 19, 2023) ................................6

*Forest Lab'ys, LLC v. Accord Healthcare Inc.*,
C.A. No. 15-272-GMS, 2016 WL 6892094 (D. Del. Nov. 21, 2016)..............................11

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)..........................................................................................8

*Leyse v. Bank of Am. Nat'l Ass'n*,
    804 F.3d 316 (3d Cir. 2015)....................................................................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)....................................................................................................7

*Merck KGaA v. Hopewell Pharma Ventures, Inc.*,
    C.A. No. 22-1365-GBW-CJB, 2024 WL 2973034 (D. Del. June 13, 2024)....................11

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)................................................................................................8

*Novartis Pharms. Corp. v. Alembic Pharms. Ltd.*,
    C.A. No. 22-1395-RGA, 2023 WL 6387975 (D. Del. Sep. 29, 2023) ....................7, 9, 16

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................................7, 9

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008)......................................................................................................7

*Sandisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005)..............................................................................................12

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)..................................................................................................................7

*Seachange Int'l, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)..............................................................................................15

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005)..............................................................................................11

*Summit 6, LLC v. Samsung Elecs. Co.*,
    802 F.3d 1283 (Fed. Cir. 2015)..............................................................................................13

*UTTO Inc. v. Metrotech Corp.*,
    119 F.4th 984 (Fed. Cir. 2024) ................................................................................................8

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 12(c) ....................................................................................................................7

## I.    <u>SUMMARY OF ARGUMENTS</u>

Azurity's motion for judgment on the pleadings is premised on two assertions:  (1) that the claims of U.S. Patent Nos. 8,877,776 (the "'776 Patent"), 11,091,439 (the "'439 Patent"); 11,091,440 (the "'440 Patent"), and 11,098,015 (the "'015 Patent") (collectively, the "Crystalline Malate Salt Patents") should not be given their full scope according to their plain and ordinary meaning, but instead should be limited to material that is either 100% crystalline or consists of "mixtures" containing at least 90% crystalline cabozantinib (*S*)-malate; and (2) ███████████ ███████████████████████████████████████████████ D.I. 43 ("Br.") at 15-18.  Both are wrong.  For the reasons below, Azurity's motion should be denied.

***First***, Azurity's claim-narrowing arguments are legally unsupported, procedurally improper, and factually flawed.  Azurity seeks to narrow "crystalline" at the pleading stage without engaging with the *Phillips* framework or the process set forth in the Scheduling Order (D.I. 58).  The plain and ordinary meaning of "crystalline"—confirmed by this Court in prior litigation involving the Crystalline Malate Salt Patents and consistent with Federal Circuit precedent—includes any amount of crystalline material.  Azurity's attempt to rewrite the claims by importing a "substantially pure" limitation from the specification is unsupported by the intrinsic record.  Nor does Azurity show any "clear and unmistakable" disavowal of claim scope required for prosecution disclaimer and prosecution history estoppel.  The statements it cites are a far cry from clear surrender of claim coverage for compositions containing less than 90% crystalline cabozantinib (*S*)-malate and do not amount to disclaimer.  In particular, the Shah Declaration submitted during prosecution was not offered to define a threshold amount of crystallinity required by the claims or to compare against any prior art composition, but instead to highlight the unexpected dissolution properties of crystalline cabozantinib (*S*)-malate compared to amorphous material.  Courts routinely deny Rule 12(c) motions in Hatch-Waxman cases under similar circumstances.



Indeed, in patents that Azurity has submitted to the U.S. Food and Drug Administration as supposedly covering its 505(b)(2) Product, Azurity represented to the U.S. Patent & Trademark Office that its amorphous solid dispersion of cabozantinib (*S*)-malate "changes to crystalline" when exposed to certain moisture conditions. These critical admissions on the face of Azurity's own documents illustrate the plausibility of Exelixis's infringement allegations and the need for discovery.

## II.  BACKGROUND

### A.  Nature and Stage of Proceedings

This case is one of five related patent-infringement cases pending before this Court arising from efforts to market pharmaceutical products containing cabozantinib (*S*)-malate, the active ingredient in Plaintiff Exelixis Inc.'s ("Exelixis") market-leading Cabometyx® therapy, approved by the FDA for treatment of patients with kidney, liver, thyroid, and/or neuroendocrine cancer. Exelixis filed its Amended Complaint against Azurity Pharmaceuticals, Inc., Azurity Pharmaceuticals India LLP, and Slayback Pharma LLC (collectively, "Azurity") on April 24, 2025, alleging that the cabozantinib (*S*)-malate product covered by Azurity's pending 505(b)(2) NDA infringes the Crystalline Malate Salt Patents as well as U.S. Patent Nos. 11,298,349 and 12,128,039

2

(together, the "Low-Impurity Patents"). On July 28, 2025, Azurity filed two motions under Rule 12(c) for judgment on the pleadings of non-infringement separately addressing the Crystalline Malate Salt Patents and the Low-Impurity Patents.

### B.     The Crystalline Malate Salt Patents

Exelixis discovered crystalline cabozantinib (*S*)-malate salts and their advantageous pharmaceutical properties, including high bioavailability and favorable solid-state properties. The Crystalline Malate Salt Patents, which share a common specification, are directed to such salts.

### 1.     The Claims of the Crystalline Malate Salt Patents

The Crystalline Malate Salt Patents cover crystalline cabozantinib (*S*)-malate presented as either the drug substance itself (i.e., the active pharmaceutical ingredient ("API")), or with excipients in a drug product (e.g., a tablet). For example, asserted claim 1 of the '439 Patent, which claims "[cabozantinib] malate salt, wherein said salt is crystalline," is directed to crystalline cabozantinib (*S*)-malate itself (e.g., an individual particle of crystalline cabozantinib (*S*)-malate). Asserted claims 1, 3, and 4 of the '439 Patent, all asserted claims of the '015 Patent, and asserted claim 1 of the '776 Patent include similar recitations directed to crystalline cabozantinib (*S*)-malate itself.[1] By contrast, claim 1 of the '440 Patent, which claims "[a] pharmaceutical composition comprising the [cabozantinib], malate salt, wherein said salt is crystalline; and a pharmaceutically acceptable excipient," is directed to the crystalline cabozantinib (*S*)-malate in a drug product (e.g., one or more particles of crystalline cabozantinib (*S*)-malate in a tablet). Claim 2 of the '776 Patent likewise is directed to a "pharmaceutical composition" of crystalline cabozantinib (*S*)-malate.

---

[1] The '015 Patent is directed to methods of treating cancer comprising administering crystalline cabozantinib (*S*)-malate. Claim 1 of '776 Patent is directed to Form N-2 of crystalline cabozantinib (*S*)-malate, while claims 3-5 of the '776 Patent are directed to methods of treating cancers comprising administering Form N-2 of crystalline cabozantinib (*S*)-malate.

### 2.    The Crystalline Malate Salt Patents' Specification and Prosecution History

The common specification makes clear that the Crystalline Malate Salt Patents cover crystalline cabozantinib (*S*)-malate and compositions thereof.  Its disclosure "relates to pharmaceutical compositions comprising a crystalline or an amorphous form of at least one malate salt of [cabozantinib]," and describes how crystalline and amorphous material may be distinguished.  *See, e.g.*, D.I. 20-23 ('776 Patent) at 1:31-35, 10:53-55.  It does not, however, define the terms "crystalline" or "a 'crystalline' composition," or require any percentage of crystalline material to fall under the scope of the claimed inventions.  In fact, the specification expressly defines a ***separate*** phrase, "substantially pure," to denote material containing "at least about 90 wt. % based on the weight" of the crystalline cabozantinib (*S*)-malate.  D.I. 20-23 ('776 Patent) at 18:18-20.  Tellingly, "substantially pure" is ***not*** recited in the claims.

Likewise, the prosecution history contains no suggestion, let alone a clear and unmistakable statement, that the scope of the Crystalline Malate Salt Patents is limited to compositions containing 90% or more crystalline material.[2]  Rather Azurity relies on a twisted reading of a declaration that was submitted to bolster Exelixis' unexpected properties arguments. During prosecution of Application No. 17/070,514, which issued as the '439 Patent,[3] the Examiner issued an obviousness rejection based on two references.  The first allegedly disclosed the structure of what would become known as cabozantinib and lists of pharmaceutically acceptable acid and base addition salts ("Bannen").  The second allegedly suggested that a skilled artisan "would have

---

[2] Indeed, Azurity itself cannot articulate what was supposedly disclaimed and even concedes this uncertainty, stating that while Azurity "maintain[s]" the claims cover only 100% crystalline cabozantinib (*S*)-malate, Azurity will "assume for purposes of this Motion" that the claims require over 90% crystalline cabozantinib (*S*)-malate.  Br. at 1 n.3.

[3] Application No. 17/070,514 is also an ancestor application to the '440 Patent and the '015 Patent. The '439 Patent is a descendant of the '776 Patent.

4

been motivated to prepare the malate salt of the disclosed compound" ("Berge"). Ex. 1 (App. No. 17/070,514, Rejection, Dec. 21, 2020) at 2-5.

In response, Exelixis argued that the Examiner failed to show that the claimed cabozantinib malate salt was prima facie obvious. D.I. 21-4 (App. No. 17/070,514, Applicant Remarks, Mar. 19, 2021), at 3-4. Exelixis further highlighted that the claimed crystalline malate salt had *two sets* of unexpected properties. *First*, Exelixis "unexpectedly found that cabozantinib crystalline malate salt exhibits properties that are beneficial compared to both the free base of cabozantin[i]b and other salts of cabozantinib"; these properties of the malate salt were supported by a table in the pending specification. *Id*. at 4. *Second*, Exelixis "found that the *crystalline* malate salt of cabozantinib exhibits an improved dissolution profile compared with the *amorphous* malate salt"; these properties of the crystalline malate salt were shown by the experiments in the Declaration of Dr. Khalid Shah. *Id*. at 4. Dr. Shah's declaration described the results of a non-prior art dissolution experiment using 12 tablet and capsule batches containing cabozantinib (*S*)-malate "to evaluate the dissolution of the crystalline API relative to the amorphous salt." D.I. 21-3 (App. No. 17/070,514, Decl. of Khalid Shah Under 37 C.F.R. § 1.132, Mar. 19, 2021), at 1-2.[4] These batches consisted of formulations of cabozantinib (*S*)-malate that were 100%, 90%, or 80% crystalline Form N-2, with the remainder being amorphous. *Id*. at 1-2. Exelixis, citing prior art reference Byrn (which does not mention cabozantinib) for the well-known chemistry principle that "amorphous forms are generally known to be more soluble and have greater bioavailability than their crystalline counterparts," argued that crystalline cabozantinib malate exhibits "an improved

---

[4] The Shah Declaration was also submitted during prosecution of the '440 Patent in response to a similar obviousness rejection over the same prior art references. *See* Ex. 2 (App. No. 17/149,365, Decl. of Khalid Shah Under 37 C.F.R. § 1.132, Jun. 1, 2021). It was not submitted during prosecution of the '776 Patent or the '015 Patent.

dissolution profile compared with the amorphous malate salt." D.I. 21-4 (App. No. 17/070,514, Applicant Remarks, Mar. 19, 2021), at 12. Importantly, Exelixis presented these findings as part of an objective indicia of non-obviousness argument—not as a limitation on the scope of the claims or as a direct comparison to prior art compositions.

### 3. Prior Litigation Involving the Crystalline Malate Salt Patents

Each of the Crystalline Malate Salt Patents has been subject to prior litigation, including trial. *First*, the '776 Patent was tried, and before that trial, defendant MSN withdrew its invalidity challenge and only contested whether its ANDA Product infringed. In evaluating whether MSN infringed the '776 Patent, the Court did not find, nor did MSN argue that any particular percentage of the cabozantinib (*S*)-malate in MSN's ANDA Product needed to be Form N-2. Instead, the Court assessed whether ***any*** Form N-2 was detectable in MSN's product using the recited testing methods. *Exelixis, Inc. v. MSN Labs. Private Ltd.*, C.A. No. 19-2017-RGA, 2023 WL 315614, at *15 (D. Del. Jan. 19, 2023) ("*MSN I*"). ***Second***, the '439, '440, and '015 Patents were held not invalid in *Exelixis, Inc. v. MSN Lab'ys Private Ltd.*, C.A. No. 22-228-RGA, 2024 WL 4491176 (D. Del. Oct. 15, 2024) ("*MSN II*"). There, MSN stipulated to infringement and did not argue, nor did the Court find that the claims required any specific percentage of crystalline material.

### C. Case Schedule

Pursuant to the Scheduling Order, the claim construction process will begin in September with exchanges between the parties and a *Markman* hearing to be held on January 6, 2026. D.I. 58 at 9-11. Moreover, discovery is just beginning. Azurity has produced only its 505(b)(2) NDA. No written discovery has been exchanged other than initial disclosures and Exelixis' July 29, 2025 Requests for Production, which Azurity has yet to respond to, and no fact depositions have been noticed. Azurity has yet to produce any samples that Exelixis requested.

### III.    LEGAL STANDARD

#### A.    Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate only where the movant clearly establishes that "no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). A Rule 12(c) motion is governed by the same standard as a motion to dismiss under Rule 12(b)(6) when the motion alleges a failure to state a claim upon which relief can be granted. *See Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015). "The court must accept the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 229 (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984). Courts permit consideration of ANDAs, NDAs, and prosecution histories at the Rule 12 stage where those documents form the basis of the claims. *See Novartis Pharms. Corp. v. Alembic Pharms. Ltd.*, C.A. No. 22-1395-RGA, 2023 WL 6387975, at *11 (D. Del. Sep. 29, 2023).

#### B.    Claim Construction

Claim construction is a question of law that may involve underlying findings of fact. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-19 (Fed. Cir. 2005) (en banc). Claim terms "are generally given their ordinary and customary meaning … to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13. Courts construe claims by considering "[t]he claims, the specification, and the prosecution history," and may also consider extrinsic

evidence such as expert testimony. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The Federal Circuit has held that claim construction is generally inappropriate at the pleading stage, particularly where the claim construction arguments rely on extrinsic evidence. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349-50 (Fed. Cir. 2018) ("Defendants' arguments boil down to objections to Nalco's proposed claim construction [], a dispute not suitable for resolution on a motion to dismiss"); *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 996 (Fed. Cir. 2024) (remanding claim construction resolved on motion to dismiss for "more focused record development" (quoting *Frans Nooren Afdichtingssystemen B.V. v. Stopaq Amcorr Inc.*, 744 F.3d 715, 722 (Fed. Cir. 2014))). Courts have declined to construe claims at the pleading stage even when only intrinsic evidence is cited. *See Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 670–71 (D. Del. 2010). Finally, to the extent claim scope is considered at the pleading stage, claims are afforded their broadest possible construction. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012).

## IV.    ARGUMENT

The Court should reject Azurity's invitation to narrow the claims *and* perform an infringement analysis at the pleadings stage based on a cherry-picked record. Azurity argues that (1) "crystalline" should be limited to "100% … or if being generous, over 90% crystalline cabozantinib malate," Br. at 1; and (2) ██████████████████████████ ███████████ Br. at 4. Both assertions are wrong. Azurity's claim-narrowing arguments fail to apply any legal framework for claim construction. Azurity compounds this error by proposing to narrow "crystalline" in a way that departs from the intrinsic record, case law, and prior factual finding of this Court. Azurity then asks the Court to resolve disputes of material fact based only on Azurity's say-so and before Exelixis has had any opportunity to evaluate the evidence or

develop the record.  This directly contravenes the applicable legal standard under Rule 12(c) to "accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party."  *Novartis*, 2023 WL 6387975, at *2.

### A.    Azurity's Claim-Narrowing Arguments Are Wrong

#### 1.    Azurity Ignores the Law and Procedures for Claim Construction

Azurity seeks to drastically narrow the claim term "crystalline" at the pleadings stage without purporting to engage in any claim construction procedures set by the Court.  That contradicts the applicable framework for claim construction, the Scheduling Order, and case law.

***First***, Azurity's brief omits the governing legal framework for claim construction, which under *Phillips* requires consideration of the claim language, specification, prosecution history, and potentially extrinsic evidence.  *Phillips*, 415 F.3d at 1316-17.  Instead, Azurity seeks to avoid any meaningful analysis of the claim language and specification and jumps straight to selected statements from the prosecution history to manufacture its disclaimer theory.  Br. at 5-7, 15-17.

***Second***, Azurity's Motion also seeks to shortcut the claim construction process currently scheduled to begin on September 4, 2025.  Pursuant to the Scheduling Order, D.I. 58, the parties are required to (1) exchange lists of claim terms for construction and proposed constructions; (2) file a Joint Claim Construction Chart with the Court by September 18, 2025; (3) exchange opening, answering, reply, and sur-reply claim construction briefs, and file these as a Joint Claim Construction Brief by December 10, 2025 setting forth, *inter alia*, a table of disputed constructions for the Court; and (4) present argument to the Court at a January 6, 2026 *Markman* Hearing.  D.I. 58 at 9-11.  Azurity has done none of this—and evidently would prefer not to.[5]  Br. at 18-19.

---

[5] It is also inappropriate to engage in claim construction without involving the other defendants to this litigation in view of the Court's order that the matters in the above caption "should be consolidated ***for all purposes***."  D.I. 58 at 2 (emphasis added).

Azurity is asking to narrow the Malate Salt Patent claims in ways that are purportedly dispositive of infringement without following the legally required steps of construing the claims and applying the properly construed claims to the accused product. *Id*. Its attempt to circumvent the law and the order of this Court should be denied.

**Third**, courts have rejected similar attempts to shortcut claim construction and limit claim terms at early stages of litigation without the benefit of formal claim construction procedures. *See, e.g.*, *Alza Corp. v. Amneal Pharms. of New York, LLC*, C.A. No. 16-914-RGA, 2017 WL 1370696, at *1-*2 (D. Del. Apr. 7, 2017) (denying 12(c) motion seeking judgment of noninfringement based on particular claim construction because "[a]t this stage, without formal claim construction, [the Court] decline[s] to read a limitation into the claim language from the embodiments"); *Eagle Pharms., Inc. v. Hospira, Inc.*, 424 F. Supp. 3d 355, 358-359 (D. Del. 2019) (denying motion to dismiss infringement claim because dispute as to meaning of "non-aqueous" was "not suitable for resolution in the context of a motion to dismiss"); *Bausch & Lomb Inc. v. SBH Holdings LLC*, C.A. No. 20-1463-LPS, 2022 WL 856750, at *4 (D. Del. Mar. 23, 2022) (denying motion to dismiss infringement claims based on alleged prosecution history estoppel, because such arguments "require[d] the Court to consider materials outside of the pleadings and perform an early claim construction, practices either unpermitted or unwarranted at the motion to dismiss stage").

### 2. The Plain and Ordinary Meaning of "Crystalline" Includes Any Amount of Crystalline

This Court made a factual finding in *MSN II* that "crystalline" means that the "cabozantinib (*S*)-malate has a 'regular repeating underlying arrangement of molecules.'" 2024 WL 4491176, at *10. This plain and ordinary meaning is consistent with other decisions holding that "any amount" of a claimed crystalline form can constitute infringement. For example, in *Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, the court found infringement based on X-ray powder

███████████████████████████████

diffraction ("XRPD") and solid-state nuclear magnetic resonance ("SSNMR") detection of crystalline peaks in an amorphous dispersion. 477 F. Supp. 3d 306, 342-45 (D. Del. 2020), *aff'd sub nom. Bristol-Myers Squibb Co. v. Sigmapharm Lab'ys, LLC*, 858 F. App'x 359 (Fed. Cir. 2021). The court held that plaintiffs' expert "did not need to quantify the amount of the [crystalline apixaban particles] because ***any amount infringes***" the claim limitation "wherein apixaban comprises crystalline apixaban particles." *Id.* at 313, 344 (emphasis added). Likewise, in *SmithKline Beecham Corp. v. Apotex Corp.*, the Federal Circuit held that a claim to "crystalline paroxetine hydrochloride hemihydrate" covered "***any amount***" of the crystalline form, without further limitation. 403 F.3d 1331, 1346 (Fed. Cir. 2005); *see also Forest Lab'ys, LLC v. Accord Healthcare Inc.*, C.A. No. 15-272-GMS, 2016 WL 6892094, at *1 n.6 (D. Del. Nov. 21, 2016).

Azurity fails to grapple with the careful fact-finding of this Court and case law construing the term "crystalline" and instead invents a numerical limitation for this term unsupported by the intrinsic record. Azurity's assertion that "no plausible construction of any claim term in the Crystalline Patents … would encompass ███████████████████████████████ ███████████████ Br. 5, misstates the issue: ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████

Azurity's attempt to evade the plain and ordinary meaning of the claims appears to rely on importing the specification's definition of "substantially pure." D.I. 17 ¶ 36. But the fact that the specification contains a precise term for the limitation that Azurity would like to read into the claims, but the claims ***do not recite that term*** reinforces that Azurity seeks to rewrite the claims contrary to the intrinsic record. *See Merck KGaA v. Hopewell Pharma Ventures, Inc.*, C.A. No. 22-1365-GBW-CJB, 2024 WL 2973034, at *4 (D. Del. June 13, 2024) (declining to limit

"maintenance period" by specification's definition for "maintenance treatment" because "[the patentee] could have used the term 'Maintenance Treatment' in the claims, or it could have explicitly defined 'maintenance period' in this way in the specification. And yet it chose not to."), *R&R adopted*, 2024 WL 3967463 (D. Del. Aug. 28, 2024).

Azurity's argument also improperly reads the claims as if they recite the ***closed*** transition phrase "consisting of," but to the extent the claims include any transition phrase at all, they recite the ***open*** term "comprising." *E.g.*, D.I. 20-24 ('439 Patent), claim 1. The Federal Circuit has "consistently held that the word 'comprising' is an open transition phrase.… In contrast, 'closed' transition phrases such as 'consisting of' are understood to exclude any elements, steps, or ingredients not specified in the claim." *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001). Thus, "pharmaceutical composition ***comprising***" claims would cover a composition so long as there is at least crystalline cabozantinib (*S*)-malate present.

### 3. Azurity Fails to Meet the High Bar for Prosecution History Estoppel and/or Disclaimer[6]

Azurity attempts to evade the plain and ordinary meaning of the claims as informed by the specification by arguing that Exelixis disclaimed claim scope via statements made during prosecution and litigation. But prosecution disclaimer requires ***clear and unmistakable*** disavowal of claim scope, *Cordis*, 511 F.3d at 1177, and "there is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). Here, there is no clear and unmistakable disclaimer.

---

[6] Azurity's Motion frames its arguments as both prosecution history estoppel and prosecution disclaimer. Br. at 4. The same legal standard applies to both, *see Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008), and so Exelixis' statements do not amount to prosecution disclaimer for the same reasons they do not give rise to prosecution history estoppel.

Azurity contends that Exelixis "repeatedly disparaged amorphous forms" during prosecution. Br. at 7. But this mischaracterizes the record—neither the Shah Declaration nor Exelixis' arguments relying on it contain any clear or unmistakable statements excluding compositions with less than 90% crystallinity. They do not "disparage amorphous forms." *Id.* As described in II.B.2, Exelixis submitted the Declaration during prosecution to support one of its unexpected property arguments: that ***crystalline*** cabozantinib (*S*)-malate exhibited unexpected properties—specifically improved dissolution—***compared to amorphous*** cabozantinib (*S*)-malate. This was shown by comparing the dissolution profiles of samples with varying amounts of crystalline and amorphous cabozantinib (*S*)-malate, where samples with more crystalline content were surprisingly found to exhibit more favorable dissolution profiles. But nowhere did the Shah Declaration suggest that the claims were limited to only certain tested mixtures or define a crystallinity threshold for the claims. Rather, Exelixis presented the dissolution data in the Shah Declaration as part of an objective indicia of non-obviousness argument, not as a limitation on claim scope. This is evident from Exelixis' response to the Examiner's rejection: the "inventors also found that the *crystalline* malate salt of cabozantinib exhibits an improved dissolution profile compared with the amorphous malate salt," and the Shah Declaration "confirm[s] the benefits of formulating cabozantinib as the crystalline malate salt." D.I. 21-4 (Response to Office Action) at 5-6. These statements do not suggest limiting the scope of the invention based on any percentage of crystalline material in a composition and thus fall far short of disclaimer.[7]

---

[7] Azurity includes a cursory reference to Exelixis' statements in *MSN II*. Br. at 8–9, 18. As an initial matter, these statements are extrinsic evidence, which "is generally of less significance than the intrinsic record" and "may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) (quoting *Phillips*, 415 F.3d at 1317, 1324). In any case, Azurity mischaracterizes these statements and takes them out of context; the disputed nature of this evidence further underscores

The facts here are comparable to *Bayer Intell. Prop. GmbH v. CAP IM Supply, Inc.*, C.A. No. 17-591-RGA, 2018 WL 1517688 (D. Del. Mar. 28, 2018). There, the claims covered a composition for controlling parasites using a specific concentration of the solvent NMP. *Id.* at *1. The defendant argued that the patentees had surrendered coverage to non-NMP solvents during prosecution by (1) submitting a declaration claiming unexpected results to overcome prior art,[8] and (2) arguing that "only the 4 compositions which are within the scope of claim 1 [i.e., use NMP] were successful." *Id.* at *4. This Court rejected both arguments, finding no clear and unmistakable disavowal. *Id.* As to the first argument, the declaration was "limited … to the seven different solvents" and "[drew] no conclusions beyond the scope of those seven solvents." *Id.* at *4. As to the second argument, the statement, "read in full context," made clear that the patentees were "not claim[ing] to have evaluated the four NMP-comprising compositions against all of the solvents in the prior art," nor "d[id] the patentees claim that NMP-comprising compositions demonstrated unexpected results over any compositions other than those tested by [the inventor] and reported in the [inventor's] Declaration." *Id.* Similarly here, the Shah Declaration presented dissolution data limited to 12 specific batches containing 80%, 90%, or 100% crystalline Form N-2 and drew no conclusions beyond the scope of those tested formulations. And Exelixis' prosecution statements, read in full context, make clear the tested crystalline compositions were not evaluated against all possible crystalline-to-amorphous ratios or the prior art, but rather, were made to showcase the surprising properties of the crystalline drug as a solid-state matter, not one with any particular percentage crystallinity.

---

why disclaimer is inappropriate for resolution on the pleadings. *Cf. Amgen Inc. v. Alkem Lab'ys Ltd.*, C.A. No. 17-815-GMS, 2017 WL 6493150, at *2–3 (D. Del. Dec. 19, 2017).

[8] The facts here are even less indicative of disclaimer than in *Bayer*. There, the claim expressly recited the solvent NMP (infringement was alleged only under the doctrine of equivalents). By contrast, Azurity invents limitations that do not even appear in the claims.

Azurity's cited cases are readily distinguishable from the facts here.  In *Seachange Int'l, Inc. v. C-COR Inc.*, the Federal Circuit held that the patentee had narrowed the meaning of the claim term "network" to require "point-to-point interconnections."  413 F.3d 1361, 1374 (Fed. Cir. 2005).  During prosecution, the patentee had argued that the prior art references did not "suggest connecting each processor to each other processor via point-to-point, two-way channel interconnections" and concluded the invention was not obvious "in view of the fact that neither [reference] … suggest the above-mentioned elements of Applicant's invention."  *Id.* at 1373.  The Court deemed this a "deliberate surrender of claim scope, unmistakable in its effect because it is not suitable to multiple interpretations."  *Id.* at 1375.  Unlike *Seachange*, Exelixis never argued the claims were distinguished over the prior art by virtue of containing 90% or more crystalline material.  There is a more reasonable interpretation of this prosecution history:  namely, that Exelixis submitted the Shah Declaration simply to demonstrate that compositions with a higher ratio of crystalline-to-amorphous cabozantinib (*S*)-malate showed improved dissolution, which was surprising and supported non-obviousness of the claimed crystalline cabozantinib (*S*)-malate. D.I. 21-4 (Response to Office Action) at 12.  The prosecution record here lacks the clear and unmistakable statements of disclaimer that were present in *Seachange*.

Likewise, in *Almirall, LLC v. Torrent Pharms., Ltd.*, the court found disclaimer where the plaintiff repeatedly stated during prosecution that the claimed formulation "does not include a carbomer [thickening agent] such as Carbopol®," and emphasized that the "use of Sepineo™ P 600 as the sole thickening agent" was one of "three significant distinctions" from the prior art.  548 F. Supp. 3d 443, 449 (D. Del. July 13, 2021).  The court noted, "Almirall does not offer any persuasive argument as to how the statements in the prosecution history might mean anything other than what they plainly say."  *Id.* at 450.  No such unambiguous statements of disclaimer are present

15

in the prosecution history here.   Furthermore, the patentee in *Almirall* repeatedly and unambiguously emphasized the absence of a particular ingredient as a key distinction from the prior art; Exelixis, in contrast, did not rely on comparative testing against any prior art composition, but instead compared compositions with different amounts of crystalline and amorphous cabozantinib (*S*)-malate, none of which was in the prior art.

### 4.    Azurity's Arguments Could Only Apply to Pharmaceutical Composition Claims

Azurity's interpretation is flawed across the board.  But even if it were correct (which it is not), it is wholly irrelevant to claims that do not recite a "pharmaceutical composition."  Azurity's (erroneous) interpretation of the claims, which depends on limiting the claims to covering only pharmaceutical compositions that include a certain amount of crystalline cabozantinib malate relative to amorphous, has no application to claims *that do not require a pharmaceutical composition*, *see supra*, Section II.B.1.  Under Azurity's view of the claims, all (or no less than 90%) of the cabozantinib malate in a formulated tablet must be crystalline.  But that makes no sense for claims that are directed to any amount of the crystalline cabozantinib malate compound (whether in a tablet or otherwise).  Azurity's incorrect disclaimer-based interpretation of the claims has no application to such compound claims.

### B.    Azurity's Non-Infringement Arguments are Premature, Wrong, and Highlight the Need for Discovery

### 1.    Exelixis Is Entitled to Discovery on Its Infringement Claims

Azurity's motion should be denied for the additional reason that Exelixis' infringement claims merit discovery.  Questions of infringement in Hatch-Waxman cases commonly cannot be resolved based on the ANDA or NDA alone.  *See Novartis*, 2023 WL 6387975, at *5 ("[A]n ANDA does not provide a complete answer to infringement.").   Indeed, "[t]he Federal Circuit has cautioned that in cases such as this 'where the subject matter is a compound capable of existing in

multiple crystalline forms, or mixtures thereof, the ultimate question of infringement is not so simple.'" *Bristol-Myers Squibb Co. v. Xspray Pharma AB*, C.A. No. 22-964-RMB, 2023 WL 3354261, at *6 (D.N.J. Apr. 25, 2023) (citing *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997)).

 *Novartis v. Alembic*, in which this Court denied a noninfringement-based motion for judgment on the pleadings, is instructive. The asserted patent claimed an "amorphous" form of the compound while the ANDA purported to require a crystalline form. *Novartis*, 2023 WL 6387975, at *4. The Court held, "[a]t this stage, [the Court] lack[s] sufficient information to adjudicate the issue of infringement," and the plaintiff "ha[d] pled sufficient facts to plausibly suggest [defendant's] ANDA product infringes the [asserted] patent" by containing an amount of infringing material sufficient to raise an infringement theory. *Id.* at *4-5. Thus "its claim survive[d] the Rule 12(c) motion." *Id.*; *see also Bristol-Myers Squibb*, 2023 WL 3354261, at *5-*6 (denying Rule 12(c) motion where asserted patent claimed crystalline dasatinib and NDA described amorphous dasatinib, because whether NDA permitted infringing levels of crystalline dasatinib was a material question of fact that could not be resolved without discovery). The same reasoning applies here, where Exelixis has plausibly pled the existence of the claimed crystalline cabozantinib (*S*)-malate in Azurity's 505(b)(2) Product. Am. Compl. ¶¶ 50, 59, 68; Pl.'s Answer to Def.'s Countercls. ¶¶ 22, 23. Azurity's 505(b)(2) NDA cannot and does not resolve infringement before the record is developed through fact and expert discovery.

  2. **Azurity Improperly Asks the Court to Resolve Factual and Highly Technical Disputes on the Pleadings**

 Even if Azurity's disclaimer argument were right—and it is not—discovery would be needed to assess whether Azurity's 505(b)(2) Product infringes the asserted claims. That is because Azurity's 505(b)(2) NDA itself raises highly technical, factual questions regarding the



presence of crystalline material, including because



███████████████████████████████████

**c.** ████████████████████████████████

███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

## V.    <u>CONCLUSION</u>

For the reasons above, Azurity's motion should be denied.

███████████████████

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

OF COUNSEL:

Lisa J. Pirozzolo
Emily R. Whelan
Kevin S. Prussia
Jonathan A. Cox
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Amy K. Wigmore
Gerard A. Salvatore
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
(202) 663-6000

Cindy Kan
Anna Mizzi
Alexander P. Gorka
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street, 45th Floor
New York, NY 10007
(212) 230-8800

August 25, 2025

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Exelixis, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 25, 2025, upon the following in the manner indicated:

Kenneth L. Dorsney, Esquire                     *VIA ELECTRONIC MAIL*
Cortlan S. Hitch, Esquire
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
*Attorneys for Defendants Azurity*
*Pharmaceuticals, Inc., Azurity Pharmaceuticals*
*India LLP, and Slayback Pharma LLC*

Andrew J. Miller, Esquire                       *VIA ELECTRONIC MAIL*
Elham F. Steiner, Esquire
WINDELS MARX LANE & MITTENDORF LLP
1 Giralda Farms
Madison, NJ 07940-1021
*Attorneys for Defendants Azurity*
*Pharmaceuticals, Inc., Azurity Pharmaceuticals*
*India LLP, and Slayback Pharma LLC*


                                    */s/ Anthony D. Raucci*
                                    _____
                                    Anthony D. Raucci (#5948)