IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


EXELIXIS, INC.,            )
                          )
        Plaintiff,        )   C.A. No. 24-1208-RGA
                          )
v.                        )
                          )
SUN PHARMACEUTICALS       )
INDUSTRIES, LTD.,         )
                          )
        Defendant.        )


                    Friday, December 5, 2025
                    11:45 a.m.
                    Courtroom 6A



                    844 King Street
                    Wilmington, Delaware



BEFORE:  THE HONORABLE RICHARD G. ANDREWS
     United States District Court Judge



APPEARANCES:

        MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
        BY:  ANTHONY DAVID RAUCCI, ESQ.

        -and-

        WILMER HALER
        BY:  KEVIN S. PRUSSIA, ESQ.
        BY:  ALEXANDER GORKA, ESQ.

                        Counsel for the Plaintiff

APPEARANCES CONTINUED:

        MORRIS JAMES, LLP
        BY:  KENNETH L. DORSNEY, ESQ.

                    Counsel for Azurity


                ---------------------------


COURT CLERK:  All rise.  The United States District Court for the District of Delaware is now in session.  The Honorable Richard G. Andrews presiding.

THE COURT:  All right.  Good morning, and please be seated.  This is Exelixis versus Sun Pharmaceutical and I guess actually that's the name of the case, but the defendant here is Azurity.  It's number 24-1208.  I see Mr. Raucci, and I see Mr. Prussia, a frequent litigant in this court.

MR. PRUSSIA:  Good morning, Your Honor.

THE COURT:  And I believe the gentleman between you is Mr. Gorka.  And I see Mr. Dorsney.

All right.  So I read these letters and I didn't really actually understand what the dispute was here, because the defendant says we produced 60 tablets from nine exhibit batches, 90 tablets from three placebo, I assume batches, five grams of API from two batches, and we don't have any ███████████████████  And yet the order wants

me to produce or the order, proposed order tells them to produce 60 tablets from nine identified exhibit batches, 30 tablets from a placebo batch and five grams from each of two API batches that are identified and ten grams of ███████ ████████████████. The only thing I can figure out is that defendants already did -- the defendant already did the exhibit batches, the placebo batch and the API batches, but the plaintiff wants twice as much as what the defendant produced, so they want it over again. Is that what it is?

MR. PRUSSIA: Not quite, Your Honor. If I may.

THE COURT: Yes.

MR. PRUSSIA: So we had served document requests seeking a sample set that is larger than what they gave us. They voluntarily produced a set that was less than that. We asked -- we said that's not enough, we want the full amount. Ultimately we had a negotiation, we arrived at -- you'll see this at Exhibit G to our letter. We arrived at what I thought was an agreement whereby they would produce much of this additional -- they refer to as additional material, but I consider to be material that we initially requested. But they conditioned it on us never again seeking anything else. That's a problem for us for two reasons. The first reason relates to what you see in the papers refer to as this ███████████████████████████ This is the material they say they don't have any more of. And the reason why it is

important -- let me just take a step back.  Your Honor may remember that the claims here cover crystalline --

THE COURT:  I don't remember what the claims cover at all.

MR. PRUSSIA:  Okay.  The claims here, among other things, cover crystalline cabozantinib malate salt.  Their starting material is indisputably crystalline cabozantinib malate.

THE COURT:  And presumably they're starting in India?

MR. PRUSSIA:  That's right.

THE COURT:  So that's not --

MR. PRUSSIA:  Exactly right.  ████████████ ████████████████████████████████████████ ████████████████████████████.

THE COURT:  And we're still in India, right?

MR. PRUSSIA:  We're still in India, right.  ████ ████████████████████████████  It's, as you may remember from other cases, ████████████████████ ████████████████████████████████████ ████████.  We know, from their own documents, statements they made to the patent office, that their own ████████ █████████████████████████████████████████ ████████████████████████████.  The problem is is that the cabozantinib in the ████ is a small percentage.  And then

when you formulate into the tablets, it's an even smaller percentage, less than 5%.  So we want to get that ███████ ████████████████████████████████████████ ████████████

THE COURT:  The intermediate material that's in India?

MR. PRUSSIA:  The ████, that's right.  And we believe if it converts to ████, undoubtedly it's in the tablet.

THE COURT:  But you got tablet samples.

MR. PRUSSIA:  Right.  We do.  But as I mentioned to Your Honor, the problem is because the API, the cabozantinib malate is such a small percentage.  It's less than 5%.  The re-crystalized material can be masked.  It can be difficult to detect in the tablet.

THE COURT:  You know, in some other cases I have people doing analyses where they can detect things if there's one part per million, which is a lot less than 5%.

MR. PRUSSIA:  That's right.  That's right.  And we're doing all sorts of testing to be able -- to try and identify the re-crystalized material, but we'd like to have the ████.  Now they told us they don't have it.  I don't know why.  I don't know whether it's destroyed or exhausted.  I don't know.  And so --

THE COURT:  So in terms of if they get it later

on, that's a different question.

MR. PRUSSIA:  That's right.

THE COURT:  So let's put that aside.  What about the things that they do have.  Is there -- is your only -- is the only point of this dispute for me to rule on this:  Does this end production of materials forever?

MR. PRUSSIA:  That's exactly, right, Your Honor.

THE COURT:  Okay.

MR. PRUSSIA:  It seems pretty small.

THE COURT:  Well, no.  It seems small enough, so I don't think we need to spend a whole lot more time on it.  Let me hear from Mr. Dorsney.

MR. PRUSSIA:  Okay.

MR.. DORSNEY:  Good morning, Your Honor.  I don't think you've read the letters incorrectly at all.  We're here because plaintiff wasn't willing to say that's enough.

THE COURT:  Well, so -- so if I rule that -- so I take it from your point of view what is in the proposed order, the first three bullet points you've done.

MR. DORSNEY:  Correct.

THE COURT:  And the fourth bullet point at this point in time you cannot do.

MR. DORSNEY:  Correct.

THE COURT:  You might or might not get some

█████████████████████████ in the future, right?

MR. DORSNEY:  I don't know.  I doubt it, but I don't know.  We've already received tentative approval for the product, so I assume it's possible.

THE COURT:  Well, I thought the way Mr. Prussia put it, maybe I just misunderstood what he said.  Entirely possible.  That the ████████████████████████ was part of the process of making these tablets, so it was a step that assuming you get -- and maybe -- actually I guess I'm following your logic, you got approval so you don't need to make any more exhibit batches.  The next time you need to do something is if and when you get permission to actually start selling and until that permission happens, which if it happens would probably likely be at the end of this case, there's no reason for you to be making more of it.

MR. DORSNEY:  Most likely.  And we're well aware of our obligations under Rule 26(e).  So if we had some obligation to produce under that provision of federal rules then we would do so, but for right now we don't have what they're asking for.  We've offered to give them even more and that wasn't enough because they wouldn't agree to not come back and ask for even more.  60 tablets, 90 placebos, ten grams in an ANDA case, that's a lot more than I'm familiar with in the past.  So I'm not really sure what we're doing here other than fighting about something we

don't have.

THE COURT:  Okay.  So Mr. Prussia -- I'm trying to figure out how to resolve this, because basically what I think is the request that I order the production of in the proposed order, the first three bullet points, that's kind of moot because it's already been produced, right?

MR. DORSNEY:  Correct, Your Honor.

MR. PRUSSIA:  I wanted to correct that.  They keep saying that this is a request for additional material.  It's almost like this.  We asked -- you have a store.  You're selling me something for $10.  I give you three and you come back and say where's the other seven?  They're saying that's additional.  No.  It's what we asked for to begin with.  This material that's in the proposed order is what we asked for to begin with that they never gave us.

THE COURT:  Well, except I thought in the letter from the defendant they say they did give it to you.

MR. PRUSSIA:  Right, but it's $3 of the ten that was initially asked for.

THE COURT:  Well, in the -- right, but now what you're asking for is the $3.

MR. PRUSSIA:  I'm asking for the rest.  This is not even the rest.  This is less than what we had initially asked for.

THE COURT:  So I'm looking at page 3 of their

letter, Mr. Prussia, and the first paragraph where it says at the last sentence part of it was "Azurity proceeded to produce 60 tablets of each of the nine exhibit batches for a total of 540 tablets, three bottles of placebo tablets for a total of 90 tablets, and five grams of API from two separate batches of API for a total of ten grams."  Have they, in fact, produced that?

MR. PRUSSIA:  That's right.  That's what they on their own gave us while we were still negotiating what the total amount would be.  So they gave us that and we thanked them for providing that material, but it doesn't exhaust them of their obligation to produce everything that we asked for, the rest of it, which we've come down from the initial amount that we had asked for.  The amount we're asking for is in the proposed order so you can consider that to be on top of what was already produced, but it doesn't moot -- it's not mooted by what they did before, if that makes sense, Your Honor.

THE COURT:  So -- and maybe I said it like this the first time around.  So basically you want twice as much as what they actually produced?

MR. PRUSSIA:  That's essentially right.

THE COURT:  Okay.

MR. PRUSSIA:  And I can explain why if you're interested.

THE COURT:  So Mr. Prussia, I'm not going to give you any more unless you submit, or tell me if you've already done this, some declaration from a scientist saying I can't actually examine this stuff unless I have more.

MR. PRUSSIA:  Well, Your Honor, this is -- this is the issue here, because we asked for an initial amount that we thought would be adequate for the nature of the testing that's required in this case.  There are -- there are three different limitations at issue that potentially are implicated by testing.  There's the XRPD, there's an NMR limitation and there's one on this impurity, the 1-1 that could require HPLC testing.  Each one of these sorts of testing require you don't just stick a tablet in a machine and get an output.  NMR, without waiving any work product, is, based on my experience in other cases, each run requires at least 15 tablets.  You're not just doing one run, you're doing multiple runs.  The same is true for HPLC.  So we asked initially in our RFPs for an amount of material that was reflective of what we thought was appropriate for this case.  They on their own decided to give us less than that.  And essentially what they're trying to say is we gave you something, live with what we gave you.  I don't think that's the way it should work.

THE COURT:  Well, I -- you know, you said you need 15 tablets to do a run.  They've given you 540 tablets.

MR. PRUSSIA:  But, Your Honor, I know that's the math, but you have to think about this with respect to each batch.  Because if we only use -- if we do one run and we don't do any more and we show infringement, they're going to say that's not representative.  We have nine different batches, you have to show it across some sufficient number of batches.  So it's really just 60 tablets and what they've given us so far and what we're asking for is something closer to what we initially asked for and we think is certainly appropriate given the limitations of this case and the outstanding infringement issues.  If they want to stipulate to the impurity limitation, we can have a discussion, but they aren't.  So we need to prove that up and because they don't monitor it for themselves in their own specification, we have to do the testing to affirmatively establish its presence.  So that puts a burden on us.  And by limiting us to 60 tablets initially, that handcuffs our ability to do the amount of testing that we need to do to meet our burden on infringement.  I just don't think in cases like this it should be left to the defendant, the generic defendant to on their own decide what's enough.  This material is less than 1%.

THE COURT:  So you think it should be left to the plaintiff to decide what's enough?

MR. PRUSSIA:  Well, it's an analysis in terms of

burden and proportionality.  The material we're asking for here is less than one percent, I think, for the tablets.

THE COURT:  I saw your math in the letter.

MR. PRUSSIA:  And so to Mr. Dorsney's point, what are they doing with the material.  They can't use it for commercial purposes because if they do, it's infringement.  It's just sitting in a warehouse.  There's no burden on them at all not doing anything with it.  All they have to do is ship it.  That's what they do.  They're a pharmaceutical drug company, they ship material all the time.  The question is proportionality and balance given the issues in the case.  It goes to ultimate issues of infringement given the amount of material that we're asking for, a very small fraction of what they have.  To me it should be no question whether this material should be produced.

This is now -- this is not your concern, but this is coming up for me in a lot of my cases in this space.  Not in Your Honor's court, but in other sessions too where we have generic defendants unilaterally on their own deciding to produce very small amounts of material to flip the burden on us to either work with what they give us or to risk waiving work product to justify why we need additional material.  That can't be the rule and I worry that if we indulge situations like this it's going to create lots of

risk for patent owner plaintiffs in these matters.

THE COURT:  Okay.  All right.

Mr. Dorsney, so don't worry about the ███████ ████████████████.  What do you have to say about what Mr. Prussia just said.

MR. DORSNEY:  Well, Your Honor, I'll start at the end.  I don't think we should be a test case for anything.  And I don't really have much to say.  I haven't heard any evidence or facts as to why he needs more than 60 tablets to ten grams.  And the other things we produced, it's just a lot of argument and I'm not sure whether that will come to pass, some of it.  60 tablets, ten grams, we've been very generous already.  It's not burdensome in the sense --

THE COURT:  So part of his argument essentially makes argument better than I would, but he says we say we need it, it's no burden on them, so we only need -- so there's no real need to like start making this into a big deal.  The easiest thing for all concerned is just for them to give us more tablets and more placebos and some more API.

MR. DORSNEY:  It's not without burden to make a production of, you know, a controlled -- a quality controlled substance from India, so there's expense and burden.  I wouldn't say it's burdensome in the sense that Your Honor says that's burdensome.  I won't make somebody do

that.  Is it proportional?  Have they justified a need for more than 60 tablets or ten grams or placebos?  I don't see a record of that.  So we made a production, it became a very long dispute.  Their order --

THE COURT:  How much do you think it costs your client to produce these materials in the, you know, you said they have to get it from India.  Okay.  I understand that.

MR. DORSNEY:  Right.

THE COURT:  And they are a drug substance, so they probably import controls or you know, something.  But your client has already done this once.

MR. DORSNEY:  Right.

THE COURT:  In fact, when did your client actually do this?

MR. DORSNEY:  Well, we started making offers to produce --

THE COURT:  No, not the offers.  When did you actually produce?

MR. DORSNEY:  I think it was just recently, maybe last month, is that right?

MR. PRUSSIA:  Two months ago.

THE COURT:  It --

MR. DORSNEY:  Two months ago.  It was recently, yeah.

THE COURT:  And how long was the production in

the -- you know, from the time of the okay, let's just produce this and try to make these people shut up to we got the federal express package saying its been delivered to wherever its been delivered to, how long did that all take?

MR. DORSNEY:  Way too long, I'm sure, but I think we got the initial request -- we made an offer to produce samples March 2025.  We made an offer again in April, which is really -- we want them to test this stuff, because they, in our opinion, have an infringement problem.

THE COURT:  Right.  Right.  I get that.

MR. DORSNEY:  So June they made an official request.  We thought it was too much.

THE COURT:  I'm not interested in history. Can't you tell me there's some point where your team decided okay, we'll give them this and X number of days later, maybe X number of months later it arrived?  What is the time frame there?

MR. PRUSSIA:  About a week after the request.

MR. DORSNEY:  I don't know for sure, but I'll take that as reasonable.  About a week, maybe two weeks in total for the process.  Like I said, I'm not standing here arguing it's burdensome to the sense I would tell you, hey, this is burdensome.  We've already made a production so I almost feel like plaintiff just wants to continue to argue so they can chalk up a win in a sense where they haven't

demonstrated an additional need for those samples.

And Your Honor, we did offer to give them the sort of the double of what they asked for, we just said but don't come back again, let's have a cutoff here and they didn't accept that.  That's why we just produced in line with the original offer, which is what ended up being in their order.

THE COURT:  So Mr. Dorsney, so in terms of negotiations at some point you said if you won't -- if you would -- if you will never ask for this again, we'll give you what they're now asking for other than the ██ , which you don't have.

MR. DORSNEY:  Yes, Your Honor.  So the only reason we're here in our view is because they weren't willing to say we won't continue to ask for more after that.

THE COURT:  Okay.  Well, I think -- so, there is a discovery request, I take it, out there for ████████ ███████████.  Mr. Dorsney, who has a long reputation around here, has said if they get any more, they'll produce it.  So I'm going to cross out the ████████████████ and otherwise grant the plaintiff's request, which, you know, I am influenced by the fact that in the course of negotiations, and maybe for other reasons, the defendant was willing to produce this apparently notwithstanding the fact that it has to come from India.  It can be done in a

relatively short period of time.  Mr. Dorsney is not actually arguing there's some burden here.  I guess maybe he's arguing it's kind of like the drip drip drip burden, but there's no burden in the sense that we normally talk about it.  And I don't think it has to be very proportional to the needs of the case given the lack of burden and the fact I'm not in a position to say how much materials are actually needed for testing.  So I'm going to order the production of the three bullet pointed items, but not the ████████████████████.  I'm not putting any limitation on the plaintiff what they might ask for later, but based on the fact that I have resolved this now, I certainly will be not inclined to look with any favor on further production. But I'm in a position of weakness in terms of knowing what's reasonable.  So today is December 5th.

MR. DORSNEY:  Your Honor, may I?

THE COURT:  Yes.

MR. DORSNEY:  I guess I'm a little confused in one sense, and I have a request on another which is I'll just ask that you allow me to ask it.  The first is they're order asked for what we've already produced.  Are you going to double that?

THE COURT:  So this is the additional production.

MR. DORSNEY:  So, okay.

THE COURT:  Right.  That's what we're talking about here, this is your -- your first production does not satisfy this order.  You have to do it again.

MR. DORSNEY:  Okay.  Which brings my request. Since we've already done this once, I don't understand the justification, but can we foot the bill to them for the second round of this?  I don't understand why we got to pay for it again.

THE COURT:  Well, you know, you said you weren't arguing burden.  I understand this is not perhaps technically a burden, but I'm not going to order that they pay for it.

MR. DORSNEY:  Thank you, Your Honor.

THE COURT:  And I'm also -- is there some reason why the order itself is confidential, because generally speaking I like to have my orders be available for the public to see?

MR. PRUSSIA:  That's a question for them.  It's because we referenced the actual exhibit numbers, batches, and it was produced to us as being confidential so we're just reciprocating.

THE COURT:  Mr. Dorsney.

MR. DORSNEY:  Well, if I could have a half a day or day to confirm, I will do that.

THE COURT:  I will cross out confidential now,

but of course, Mr. Dorsney, you know, the chances of me, without a very serious --

MR. DORSNEY:  Understood, Your Honor.

THE COURT:  -- effort is that I think it should not be confidential.  In any event, I've signed the order, you know what I've signed, so you can start the process of getting it and I will hold filing until we hear back from Mr. Dorsney.  Okay.  But meanwhile I'm going to give it to the deputy clerk, because she will not lose it.

All right.  Is there anything else?

MR. PRUSSIA:  No, Your Honor.  Thank you for your time.

MR. DORSNEY:  No, Your Honor.

THE COURT:  All right.  Well, thank you for your time.  We'll be in recess.

COURT CLERK:  All rise.

(Court adjourned at 12:15 p.m.)

----------------------------------

I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the proceedings.

/s/ Stacy M. Ingram, RPR
Official Court Reporter
U.S. District Court

**$**

$10 [1] - 8:11
$3 [1] - 8:21

**/**

/s [1] - 19:24

**1**

1% [1] - 11:22
1-1 [1] - 10:11
11:45 [1] - 1:11
12:15 [1] - 19:17
15 [2] - 10:16, 10:25

**2**

2025 [2] - 1:10, 15:7
24-1208 [1] - 2:14
24-1208-RGA [1] - 1:4
26(e) [1] - 7:17

**3**

3 [2] - 8:18, 8:25
30 [1] - 3:2

**5**

5 [1] - 1:10
5% [3] - 5:2, 5:14, 5:18
540 [2] - 9:4, 10:25
5th [1] - 17:15

**6**

60 [9] - 2:22, 3:2, 7:22, 9:3, 11:7, 11:17, 13:9, 13:12, 14:2
6A [1] - 1:11

**8**

844 [1] - 1:13

**9**

90 [3] - 2:23, 7:22, 9:5

**A**

a.m [1] - 1:11
ability [1] - 11:18
able [1] - 5:20
accept [1] - 16:5
accurate [1] - 19:22
actual [1] - 18:19
additional [7] - 3:19, 8:9, 8:13, 12:23, 16:1, 17:23
adequate [1] - 10:7
adjourned [1] - 19:17
affirmatively [1] - 11:16
ago [2] - 14:21, 14:23
agree [1] - 7:21
agreement [1] - 3:18
ALEXANDER [1] - 1:24
allow [1] - 17:20
almost [2] - 8:10, 15:24
■■■■■■
amount [8] - 3:15, 9:10, 9:14, 10:6, 10:18, 11:18, 12:13
amounts [1] - 12:21
analyses [1] - 5:17
analysis [1] - 11:25
ANDA [1] - 7:23
ANDREWS [1] - 1:16
Andrews [1] - 2:10
ANTHONY [1] - 1:21
API [7] - 2:24, 3:4, 3:7, 5:12, 9:5, 9:6, 13:20
APPEARANCES [2] - 1:19, 2:1
appropriate [2] - 10:19, 11:10
approval [2] - 7:3, 7:10
April [1] - 15:8
argue [1] - 15:24
arguing [4] - 15:22, 17:2, 17:3, 18:10
argument [3] - 13:11, 13:15, 13:16
arrived [3] - 3:16, 3:17, 15:16
ARSHT [1] - 1:20
■■■■■

**B**

■■■■■■
aside [1] - 6:3
assume [2] - 2:23, 7:4
assuming [1] - 7:9
available [1] - 18:16
aware [1] - 7:16
Azurity [3] - 2:4, 2:14, 9:2

**B**

balance [1] - 12:11
based [2] - 10:15, 17:11
batch [3] - 3:3, 3:7, 11:3
batches [13] - 2:23, 2:24, 3:2, 3:4, 3:7, 7:11, 9:3, 9:6, 11:6, 11:7, 18:19
became [1] - 14:3
BEFORE [1] - 1:16
begin [2] - 8:14, 8:15
better [1] - 13:16
between [1] - 2:18
big [1] - 13:18
bill [1] - 18:6
bottles [1] - 9:4
brings [1] - 18:4
bullet [4] - 6:20, 6:22, 8:5, 17:9
burden [14] - 11:16, 11:19, 12:1, 12:8, 12:22, 13:17, 13:21, 13:24, 17:2, 17:3, 17:4, 17:6, 18:10, 18:11
burdensome [5] - 13:13, 13:24, 13:25, 15:22, 15:23
BY [4] - 1:21, 1:23, 1:24, 2:3

**C**

C.A [1] - 1:4
cabozantinib [4] - 4:6, 4:8, 4:25, 5:13
cannot [1] - 6:23
case [9] - 2:13, 7:14, 7:23, 10:8, 10:20, 11:10, 12:12, 13:7, 17:6
cases [5] - 4:19, 5:16, 10:15, 11:20, 12:18
certainly [2] - 11:10, 17:12
certify [1] - 19:21
chalk [1] - 15:25
chances [1] - 19:1
claims [3] - 4:2, 4:3, 4:5
CLERK [2] - 2:8, 19:16
clerk [1] - 19:9
client [3] - 14:6, 14:11, 14:13
closer [1] - 11:9
coming [1] - 12:18
commercial [1] - 12:6
company [1] - 12:10
concern [1] - 12:17
concerned [1] - 13:19
conditioned [1] - 3:21
confidential [4] - 18:15, 18:20, 18:25, 19:5
confirm [2] - 5:3, 18:24
confused [1] - 17:18
consider [2] - 3:20, 9:15
continue [2] - 15:24, 16:15
CONTINUED [1] - 2:1
controlled [2] - 13:22, 13:23
controls [1] - 14:10
convert [2] - 4:20, 4:24
converts [2] - 5:3, 5:8
correct [4] - 6:21, 6:24, 8:7, 8:8
costs [1] - 14:5
Counsel [2] - 1:25, 2:4
course [2] - 16:22, 19:1
court [2] - 2:16, 12:19
COURT [52] - 1:1, 2:8, 2:11, 2:18, 3:11, 4:3, 4:9, 4:12, 4:16, 5:5, 5:10, 5:16, 5:25, 6:3, 6:8, 6:10, 6:18, 6:22, 6:25, 7:5, 8:2, 8:16, 8:20, 8:25, 9:19, 9:23, 10:1, 10:24, 11:23, 12:3, 13:2, 13:15, 14:5, 14:9, 14:13, 14:17, 14:22, 14:25, 15:10, 15:13, 16:8, 16:16, 17:17, 17:23, 18:1, 18:9, 18:14, 18:22, 18:25, 19:4, 19:14, 19:16
Court [5] - 1:17, 2:9, 19:17, 19:24, 19:25
Courtroom [1] - 1:11
cover [3] - 4:2, 4:4, 4:6
create [1] - 12:25
cross [2] - 16:20, 18:25
crystalized [2] - 5:14, 5:21
crystalline [5] - 4:2, 4:6, 4:7, 4:20, 4:24
cutoff [1] - 16:4

**D**

DAVID [1] - 1:21
days [1] - 15:15
deal [1] - 13:19
December [2] - 1:10, 17:15
decide [2] - 11:21, 11:24
decided [2] - 10:20, 15:14
deciding [1] - 12:21
declaration [1] - 10:3
Defendant [1] - 1:8
defendant [8] - 2:14, 2:22, 3:6, 3:8, 8:17, 11:20, 11:21, 16:23
defendants [2] - 3:6, 12:20
DELAWARE [1] - 1:1
Delaware [2] - 1:14, 2:9
delivered [2] - 15:3, 15:4
demonstrated [1] - 16:1
deputy [1] - 19:9
destroyed [1] - 5:23
detect [2] - 5:15, 5:17
different [3] - 6:1, 10:9, 11:5
difficult [1] - 5:15
discovery [1] - 16:17
discussion [1] - 11:13
■■■■■■
dispute [3] - 2:21, 6:5, 14:4
DISTRICT [2] - 1:1, 1:1

**District** [4] - 1:17, 2:9, 19:25
**document** [1] - 3:12
**documents** [1] - 4:21
**done** [5] - 6:20, 10:3, 14:11, 16:25, 18:5
**Dorsney** [9] - 2:19, 6:12, 13:3, 16:8, 16:18, 17:1, 18:22, 19:1, 19:8
**DORSNEY** [26] - 2:3, 6:14, 6:21, 6:24, 7:2, 7:16, 8:7, 13:6, 13:21, 14:8, 14:12, 14:15, 14:19, 14:23, 15:5, 15:11, 15:19, 16:13, 17:16, 17:18, 17:25, 18:4, 18:13, 18:23, 19:3, 19:13
**Dorsney's** [1] - 12:4
**double** [2] - 16:3, 17:22
**doubt** [1] - 7:2
**down** [2] - 4:14, 9:13
**drip** [3] - 17:3
**drug** [2] - 12:10, 14:9

## E

**easiest** [1] - 13:19
**effort** [1] - 19:4
**either** [1] - 12:22
**end** [3] - 6:6, 7:14, 13:7
**ended** [1] - 16:6
**entirely** [1] - 7:6
**ESQ** [4] - 1:21, 1:23, 1:24, 2:3
**essentially** [3] - 9:22, 10:21, 13:15
**establish** [1] - 11:16
**event** [1] - 19:5
**evidence** [1] - 13:9
**exactly** [2] - 4:13, 6:7
**examine** [1] - 10:4
**except** [1] - 8:16
**EXELIXIS** [1] - 1:3
**Exelixis** [1] - 2:12
**exhaust** [1] - 9:11
**exhausted** [1] - 5:23
**Exhibit** [1] - 3:17
**exhibit** [6] - 2:23, 3:2, 3:7, 7:11, 9:3, 18:19
**expense** [1] - 13:23
**experience** [1] - 10:15
**explain** [1] - 9:24
**express** [1] - 15:3

## F

**fact** [7] - 4:23, 9:7, 14:13, 16:22, 16:24, 17:7, 17:12
**facts** [1] - 13:9
**familiar** [1] - 7:24
**far** [1] - 11:8
**favor** [1] - 17:13
**federal** [2] - 7:18, 15:3
**fighting** [1] - 7:25
**figure** [2] - 3:5, 8:3
**filing** [1] - 19:7
**first** [7] - 3:22, 6:20, 8:5, 9:1, 9:20, 17:20, 18:2
**five** [3] - 2:24, 3:3, 9:5
**flip** [1] - 12:21
**following** [1] - 7:10
**foot** [1] - 18:6
**FOR** [1] - 1:1
**foregoing** [1] - 19:21
**forever** [1] - 6:6
**forms** [1] - 4:14
**formulate** [2] - 4:18, 5:1
**fourth** [1] - 6:22
**fraction** [1] - 12:14
**frame** [1] - 15:16
**frequent** [1] - 2:15
**Friday** [1] - 1:10
**full** [1] - 3:15
**future** [1] - 7:1

## G

**generally** [1] - 18:15
**generic** [2] - 11:21, 12:20
**generous** [1] - 13:13
**gentleman** [1] - 2:18
**given** [6] - 10:25, 11:8, 11:10, 12:11, 12:13, 17:6
**GORKA** [1] - 1:24
**Gorka** [1] - 2:19
**grams** [9] - 2:24, 3:3, 3:4, 7:23, 9:5, 9:6, 13:10, 13:12, 14:2
**grant** [1] - 16:21
**guess** [4] - 2:13, 7:9, 17:2, 17:18

## H

**HALER** [1] - 1:23

**half** [1] - 18:23
**handcuffs** [1] - 11:18
**hear** [2] - 6:12, 19:7
**heard** [1] - 13:9
**hereby** [1] - 19:21
**highly** [1] - 4:19
**history** [1] - 15:13
**hold** [1] - 19:7
**Honor** [19] - 2:17, 3:10, 4:1, 5:12, 6:7, 6:14, 8:7, 9:18, 10:5, 11:1, 13:6, 13:25, 16:2, 16:13, 17:16, 18:13, 19:3, 19:11, 19:13
**Honor's** [1] - 12:19
**HONORABLE** [1] - 1:16
**Honorable** [1] - 2:10
**HPLC** [2] - 10:12, 10:17

## I

**identified** [2] - 3:2, 3:4
**identify** [1] - 5:21
**implicated** [1] - 10:10
**import** [1] - 14:10
**important** [1] - 4:1
**impurity** [2] - 10:11, 11:12
**IN** [1] - 1:1
**INC** [1] - 1:3
**inclined** [1] - 17:13
**incorrectly** [1] - 6:15
**India** [7] - 4:10, 4:16, 4:17, 5:6, 13:23, 14:7, 16:25
**indisputably** [1] - 4:7
**indulge** [1] - 12:25
**iNDUSTRIES** [1] - 1:7
**influenced** [1] - 16:22
**infringement** [6] - 11:4, 11:11, 11:19, 12:7, 12:13, 15:9
**Ingram** [1] - 19:24
**initial** [3] - 9:13, 10:6, 15:6
**interested** [2] - 9:25, 15:13
**intermediate** [2] - 5:3, 5:5
**issue** [2] - 10:6, 10:9
**issues** [3] - 11:11, 12:12
**items** [1] - 17:9
**itself** [1] - 18:15

## J

**JAMES** [1] - 2:2
**Judge** [1] - 1:17
**June** [1] - 15:11
**justification** [1] - 18:6
**justified** [1] - 14:1
**justify** [1] - 12:23

## K

**keep** [1] - 8:9
**KENNETH** [1] - 2:3
**KEVIN** [1] - 1:23
**kind** [2] - 8:5, 17:3
**King** [1] - 1:13
**knowing** [1] - 17:14

## L

**lack** [1] - 17:6
**larger** [1] - 3:13
**last** [2] - 9:2, 14:20
**least** [1] - 10:16
**left** [2] - 11:20, 11:23
**less** [8] - 3:14, 5:2, 5:13, 5:18, 8:23, 10:20, 11:22, 12:2
**letter** [4] - 3:17, 8:16, 9:1, 12:3
**letters** [2] - 2:20, 6:15
**likely** [2] - 7:14, 7:16
**limitation** [3] - 10:11, 11:12, 17:10
**limitations** [2] - 10:9, 11:10
**limiting** [1] - 11:17
**line** [1] - 16:5
**litigant** [1] - 2:15
**live** [1] - 10:22
**LLP** [2] - 1:20, 2:2
**logic** [1] - 7:10
**look** [1] - 17:13
**looking** [1] - 8:25
**lose** [1] - 19:9
**LTD** [1] - 1:7

## M

**machine** [1] - 10:13
**malate** [3] - 4:6, 4:8, 5:13
**March** [1] - 15:7
**masked** [1] - 5:14
**material** [23] - 3:19,

3:20, 3:24, 4:7, 4:19, 4:21, 4:24, 5:3, 5:5, 5:14, 5:21, 8:9, 8:14, 9:11, 10:18, 11:22, 12:1, 12:5, 12:10, 12:13, 12:15, 12:21, 12:24
**materials** [3] - 6:6, 14:6, 17:7
**math** [2] - 11:2, 12:3
**matters** [1] - 13:1
**meanwhile** [1] - 19:8
**meet** [1] - 11:19
**melt** [1] - 4:14
**mentioned** [1] - 5:11
**might** [3] - 6:25, 17:11
**million** [1] - 5:18
**misunderstood** [1] - 7:6
**monitor** [1] - 11:14
**month** [1] - 14:20
**months** [3] - 14:21, 14:23, 15:16
**moot** [2] - 8:6, 9:16
**mooted** [1] - 9:17
**morning** [3] - 2:11, 2:17, 6:14
**MORRIS** [2] - 1:20, 2:2
**most** [1] - 7:16
**MR** [52] - 2:17, 3:10, 3:12, 4:5, 4:11, 4:13, 4:17, 5:7, 5:11, 5:19, 6:2, 6:7, 6:9, 6:13, 6:21, 6:24, 7:2, 7:16, 8:7, 8:8, 8:18, 8:22, 9:8, 9:22, 9:24, 10:5, 11:1, 11:25, 12:4, 13:6, 13:21, 14:8, 14:12, 14:15, 14:19, 14:21, 14:23, 15:5, 15:11, 15:18, 15:19, 16:13, 17:16, 17:18, 17:25, 18:4, 18:13, 18:18, 18:23, 19:3, 19:11, 19:13
**MR.** [1] - 6:14
**multiple** [1] - 10:17

## N

**name** [1] - 2:13
**nature** [1] - 10:7
**need** [12] - 6:11, 7:10, 7:11, 10:25, 11:13, 11:19, 12:23, 13:17, 13:18, 14:1, 16:1

**needed** [1] - 17:8
**needs** [2] - 13:9, 17:6
**negotiating** [1] - 9:9
**negotiation** [1] - 3:16
**negotiations** [2] - 16:9, 16:23
**never** [3] - 3:21, 8:15, 16:10
**next** [1] - 7:11
**NICHOLS** [1] - 1:20
**nine** [4] - 2:22, 3:2, 9:3, 11:5
**NMR** [2] - 10:10, 10:14
**normally** [1] - 17:4
**notes** [1] - 19:22
**notwithstanding** [1] - 16:24
**number** [4] - 2:14, 11:6, 15:15, 15:16
**numbers** [1] - 18:19

## O

**obligation** [2] - 7:18, 9:12
**obligations** [1] - 7:17
**OF** [1] - 1:1
**offer** [4] - 15:6, 15:7, 16:2, 16:6
**offered** [1] - 7:20
**offers** [2] - 14:15, 14:17
**office** [1] - 4:22
**Official** [1] - 19:24
**official** [1] - 15:11
**once** [2] - 14:11, 18:5
**one** [7] - 5:18, 10:11, 10:12, 10:16, 11:3, 12:2, 17:19
**opinion** [1] - 15:9
**order** [16] - 2:25, 3:1, 6:20, 8:4, 8:5, 8:14, 9:15, 14:4, 16:7, 17:8, 17:21, 18:3, 18:11, 18:15, 19:5
**orders** [1] - 18:16
**original** [1] - 16:6
**otherwise** [1] - 16:21
**output** [1] - 10:14
**outstanding** [1] - 11:11
**own** [7] - 4:21, 4:22, 9:9, 10:20, 11:15, 11:21, 12:20
**owner** [1] - 13:1

## P

**p.m** [1] - 19:17
**package** [1] - 15:3
**page** [1] - 8:25
**papers** [1] - 3:23
**paragraph** [1] - 9:1
**part** [4] - 5:18, 7:7, 9:2, 13:15
**pass** [1] - 13:12
**past** [1] - 7:24
**patent** [2] - 4:22, 13:1
**pay** [2] - 18:7, 18:12
**people** [2] - 5:17, 15:2
**per** [1] - 5:18
**percent** [1] - 12:2
**percentage** [3] - 4:25, 5:2, 5:13
**perhaps** [1] - 18:10
**period** [1] - 17:1
**permission** [2] - 7:12, 7:13
**Pharmaceutical** [1] - 2:12
**pharmaceutical** [1] - 12:10
**PHARMACEUTICALS** [1] - 1:6
**placebo** [4] - 2:23, 3:3, 3:7, 9:4
**placebos** [3] - 7:22, 13:20, 14:2
**plaintiff** [5] - 3:8, 6:16, 11:24, 15:24, 17:11
**Plaintiff** [2] - 1:4, 1:25
**plaintiff's** [1] - 16:21
**plaintiffs** [1] - 13:1
**point** [7] - 6:5, 6:19, 6:22, 6:23, 12:4, 15:14, 16:9
**pointed** [1] - 17:9
**points** [2] - 6:20, 8:5
**position** [2] - 17:7, 17:14
**possible** [2] - 7:4, 7:7
**potentially** [1] - 10:9
**presence** [1] - 11:16
**presiding** [1] - 2:10
**presumably** [1] - 4:9
**pretty** [1] - 6:9
**problem** [4] - 3:22, 4:24, 5:12, 15:9
**proceeded** [1] - 9:2
**proceedings** [1] - 19:22
**process** [3] - 7:8, 15:21, 19:6

**produce** [14] - 3:1, 3:2, 3:18, 7:18, 9:3, 9:12, 12:21, 14:6, 14:16, 14:18, 15:2, 15:7, 16:19, 16:24
**produced** [12] - 2:22, 3:9, 3:14, 8:6, 9:7, 9:16, 9:21, 12:16, 13:10, 16:5, 17:21, 18:20
**product** [3] - 7:4, 10:14, 12:23
**production** [10] - 6:6, 8:4, 13:22, 14:3, 14:25, 15:23, 17:9, 17:13, 17:24, 18:2
**propensity** [2] - 4:20, 4:23
**proportional** [2] - 14:1, 17:5
**proportionality** [2] - 12:1, 12:11
**proposed** [5] - 3:1, 6:19, 8:5, 8:14, 9:15
**prove** [1] - 11:13
**providing** [1] - 9:11
**provision** [1] - 7:18
**PRUSSIA** [29] - 1:23, 2:17, 3:10, 3:12, 4:5, 4:11, 4:13, 4:17, 5:7, 5:11, 5:19, 6:2, 6:7, 6:9, 6:13, 8:8, 8:18, 8:22, 9:8, 9:22, 9:24, 10:5, 11:1, 11:25, 12:4, 14:21, 15:18, 18:18, 19:11
**Prussia** [6] - 2:15, 7:5, 8:2, 9:1, 10:1, 13:5
**public** [1] - 18:17
**purposes** [1] - 12:6
**put** [2] - 6:3, 7:6
**puts** [1] - 11:16
**putting** [1] - 17:10

## Q

**quality** [1] - 13:22
**quite** [1] - 3:10

## R

**rate** [1] - 5:4
**Raucci** [1] - 2:15
**RAUCCI** [1] - 1:21
**re** [2] - 5:14, 5:21
**re-crystalized** [2] -

5:14, 5:21
**read** [2] - 2:20, 6:15
**real** [1] - 13:18
**really** [5] - 2:21, 7:24, 11:7, 13:8, 15:8
**reason** [5] - 3:22, 3:25, 7:15, 16:14, 18:14
**reasonable** [2] - 15:20, 17:15
**reasons** [2] - 3:22, 16:23
**received** [1] - 7:3
**recently** [2] - 14:19, 14:23
**recess** [1] - 19:15
**reciprocating** [1] - 18:21
**record** [1] - 14:3
**refer** [2] - 3:19, 3:23
**referenced** [1] - 18:19
**reflective** [1] - 10:19
**relates** [1] - 3:23
**relatively** [1] - 17:1
**remember** [3] - 4:2, 4:3, 4:19
**Reporter** [1] - 19:24
**representative** [1] - 11:5
**reputation** [1] - 16:18
**request** [9] - 8:4, 8:9, 15:6, 15:12, 15:18, 16:17, 16:21, 17:19, 18:4
**requested** [1] - 3:20
**requests** [1] - 3:12
**require** [2] - 10:12, 10:13
**required** [1] - 10:8
**requires** [1] - 10:15
**resolve** [1] - 8:3
**resolved** [1] - 17:12
**respect** [1] - 11:2
**rest** [3] - 8:22, 8:23, 9:13
**RFPs** [1] - 10:18
**RICHARD** [1] - 1:16
**Richard** [1] - 2:10
**rise** [2] - 2:8, 19:16
**risk** [2] - 12:23, 13:1
**round** [1] - 18:7
**RPR** [1] - 19:24
**rule** [3] - 6:5, 6:18, 12:24
**Rule** [1] - 7:17
**rules** [1] - 7:18
**run** [4] - 10:15, 10:16, 10:25, 11:3

**runs** [1] - 10:17

## S

**salt** [1] - 4:6
**sample** [1] - 3:13
**samples** [3] - 5:10, 15:7, 16:1
**satisfy** [1] - 18:3
**saw** [1] - 12:3
**scientist** [1] - 10:3
**seated** [1] - 2:12
**second** [1] - 18:7
**see** [7] - 2:14, 2:15, 2:19, 3:16, 3:23, 14:2, 18:17
**seeking** [2] - 3:13, 3:21
**selling** [2] - 7:13, 8:11
**sense** [7] - 9:18, 13:14, 13:24, 15:22, 15:25, 17:4, 17:19
**sentence** [1] - 9:2
**separate** [1] - 9:5
**serious** [1] - 19:2
**served** [1] - 3:12
**session** [1] - 2:10
**sessions** [1] - 12:19
**set** [2] - 3:13, 3:14
**seven** [1] - 8:12
**ship** [2] - 12:9, 12:10
**short** [1] - 17:1
**show** [2] - 11:4, 11:6
**shut** [1] - 15:2
**signed** [2] - 19:5, 19:6
**sitting** [1] - 12:7
**situations** [1] - 12:25
**small** [6] - 4:25, 5:13, 6:9, 6:10, 12:14, 12:21
**smaller** [1] - 5:1



**sort** [1] - 16:3
**sorts** [2] - 5:20, 10:12
**space** [1] - 12:18
**speaking** [1] - 18:16
**specification** [1] - 11:15
**spend** [1] - 6:11
**Stacy** [1] - 19:24
**standing** [1] - 15:21
**start** [4] - 7:13, 13:6, 13:18, 19:6
**started** [1] - 14:15

**starting** [2] - 4:7, 4:9
**statements** [1] - 4:21
**STATES** [1] - 1:1
**States** [2] - 1:17, 2:8
**stenographic** [1] - 19:22
**step** [2] - 4:1, 7:8
**stick** [1] - 10:13
**still** [3] - 4:16, 4:17, 9:9
**stipulate** [1] - 11:12
**store** [1] - 8:10
**Street** [1] - 1:13
**stuff** [2] - 10:4, 15:8
**submit** [1] - 10:2
**substance** [2] - 13:23, 14:9
**sufficient** [1] - 11:6
**Sun** [1] - 2:12
**SUN** [1] - 1:6

## T

**tablet** [5] - 4:18, 5:9, 5:10, 5:15, 10:13
**tablets** [21] - 2:22, 2:23, 3:2, 3:3, 5:1, 7:8, 7:22, 9:3, 9:4, 9:5, 10:16, 10:25, 11:7, 11:17, 12:2, 13:10, 13:12, 13:20, 14:2
**team** [1] - 15:14
**technically** [1] - 18:11
**ten** [7] - 3:4, 7:23, 8:18, 9:6, 13:10, 13:12, 14:2
**tentative** [1] - 7:3
**terms** [4] - 5:25, 11:25, 16:8, 17:14
**test** [3] - 5:3, 13:7, 15:8
**testing** [8] - 5:20, 10:8, 10:10, 10:12, 10:13, 11:15, 11:18, 17:8
**thanked** [1] - 9:10
**THE** [52] - 1:1, 1:1, 1:16, 2:11, 2:18, 3:11, 4:3, 4:9, 4:12, 4:16, 5:5, 5:10, 5:16, 5:25, 6:3, 6:8, 6:10, 6:18, 6:22, 6:25, 7:5, 8:2, 8:16, 8:20, 8:25, 9:19, 9:23, 10:1, 10:24, 11:23, 12:3, 13:2, 13:15, 14:5, 14:9,

14:13, 14:17, 14:22, 14:25, 15:10, 15:13, 16:8, 16:16, 17:17, 17:23, 18:1, 18:9, 18:14, 18:22, 18:25, 19:4, 19:14
**themselves** [1] - 11:14
**they've** [2] - 10:25, 11:7
**three** [7] - 2:23, 6:20, 8:5, 8:11, 9:4, 10:9, 17:9
**today** [1] - 17:15
**top** [1] - 9:16
**total** [5] - 9:4, 9:5, 9:6, 9:10, 15:21
**transcript** [1] - 19:22
**true** [2] - 10:17, 19:21
**try** [2] - 5:20, 15:2
**trying** [2] - 8:2, 10:21
**TUNNELL** [1] - 1:20
**twice** [2] - 3:8, 9:20
**two** [7] - 2:24, 3:3, 3:22, 9:5, 14:21, 14:23, 15:20

## U

**U.S** [1] - 19:25
**ultimate** [1] - 12:12
**ultimately** [1] - 3:16
**under** [2] - 7:17, 7:18
**understood** [1] - 19:3
**undoubtedly** [1] - 5:8
**unilaterally** [1] - 12:20
**UNITED** [1] - 1:1
**United** [2] - 1:17, 2:8
**unless** [2] - 10:2, 10:4
**unstable** [1] - 4:20
**up** [5] - 11:13, 12:18, 15:2, 15:25, 16:6

## V

**versus** [1] - 2:12
**view** [2] - 6:19, 16:14
**voluntarily** [1] - 3:14

## W

**waiving** [2] - 10:14, 12:23
**wants** [3] - 2:25, 3:8, 15:24
**warehouse** [1] - 12:7

**weakness** [1] - 17:14
**week** [2] - 15:18, 15:20
**weeks** [1] - 15:20
**whereby** [1] - 3:18
**whole** [1] - 6:11
**willing** [3] - 6:16, 16:15, 16:24
**WILMER** [1] - 1:23
**Wilmington** [1] - 1:14
**win** [1] - 15:25
**worry** [2] - 12:24, 13:3

## X

**XRPD** [1] - 10:10